Steven Mitnick, Esq.
Marc D. Miceli, Esq.
**SM LAW PC**
P.O. Box 530
Oldwick, New Jersey 08858
(908) 572-7275
*Counsel to William J. Focazio*
*Chapter 11 Debtor*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 (Subchapter V) |
| WILLIAM J. FOCAZIO, | Case No. 19-10880 (VFP) |
| Debtor. | |

**SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION**

This Plan of Reorganization is presented to you to inform you of the proposed Plan for restructuring the debt of William J. Focazio ("Focazio" or "Debtor" or "Reorganized Debtor"), and to seek your vote to accept the Plan.

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY OCTOBER ____, 2020.**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY OCTOBER ___, 2020 THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS: STEVEN MITNICK, ESQ. AND MARC D. MICELI, ESQ., SM LAW PC, P.O. BOX 530, OLDWICK, NEW JERSEY 08858.**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR OCTOBER ___, 2020 IN COURTROOM No. 3B AT THE UNITED STATES BANKRUPTCY COURT, MARTIN LUTHER KING JR. FEDERAL BUILDING & COURTHOUSE, 50 WALNUT STREET, THIRD FLOOR, NEWARK, NEW JERSEY 07102.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

September 23, 2020

Steven Mitnick, Esq.
Marc D. Miceli, Esq.
**SM LAW PC**
P.O. Box 530
Oldwick, New Jersey 08858
(908) 572-7275
*Counsel to William J. Focazio*
*Chapter 11 Debtor*

# TABLE OF CONTENTS

**PAGE**

SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS ..........................................5

ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR..........................7

1.1.    Nature of the Debtor's Business. ....................................................................................7

1.2.    History of Business Operations of the Debtor....................................................................7

1.3.    Filing of the Debtor's Chapter 11 Case. ............................................................................7

1.4.    Legal Structure and Ownership. .......................................................................................7

1.5.    Debtor's Assets..................................................................................................................8

1.6.    Debtor's Liabilities. ..........................................................................................................9

1.7.    Current and Historical Financial Conditions. .................................................................10

1.8.    Events Leading to the Filing of the Bankruptcy Case. ....................................................10

A.    First Commerce Bank .......................................................................................................10

1.9.    Significant Events During the Bankruptcy Case. .............................................................11

1.10.    Projected Recovery of Avoidable Transfers [Choose option] .......................................15

ARTICLE 2: THE PLAN. ...........................................................................................................15

2.1.    Unclassified Claims. .......................................................................................................16

A.    Administrative Expenses .................................................................................................16

B.    Priority Tax Claims. .........................................................................................................18

2.2.    Classes of Claims and Equity Interests............................................................................19

A.    Classes of Secured Claims...............................................................................................20

B.    Classes of Priority Unsecured Claims. ............................................................................20

C.    Class[es]of General Unsecured Claims ...........................................................................20

D.    Class[es] of Equity Interest Holders. ...............................................................................21

2.3.    Estimated Number and Amount of Claims Objections. ...................................................21

2.4.    Treatment of Executory Contracts and Unexpired Leases. ..............................................22

2.5.    Means for Implementation of the Plan. ............................................................................23

2.6.    Payments...........................................................................................................................24

2.7.    Post-Confirmation Management.......................................................................................24

2.8.    Tax Consequences of the Plan. ........................................................................................24

2.9.    Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan.25

ARTICLE 3: FEASIBILITY OF PLAN.......................................................................................25

3.1.    Ability to Initially Fund Plan............................................................................................25

3.2.    Ability to Make Future Plan Payments And Operate Without Further Reorganization. ...25

ARTICLE 4: LIQUIDATION ANALYSIS. .................................................................................25

ARTICLE 5: DISCHARGE. ........................................................................................................25

ARTICLE 6: GENERAL PROVISIONS. ................................................................26
  6.1.   Title to Assets. ............................................................................26
  6.2.   Binding Effect. ..........................................................................26
  6.3.   Severability. ..............................................................................27
  6.4.   Retention of Jurisdiction by the Bankruptcy Court. ..............................27
  6.5.   Captions. ...................................................................................27
  6.6.   Modification of Plan. .................................................................27
  6.7.   Final Decree. .............................................................................27
ARTICLE 7: ATTACHMENTS. .........................................................................28
ARTICLE 8: FREQUENTLY ASKED QUESTIONS. .............................................28
ARTICLE 9: DEFINITIONS. ..............................................................................30

## SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS

- SECURED CLAIMS – First Commerce Bank ("FCB") is owed in excess of $7,671,243.94, however, FCB's claim is contingent and shall be waived and released in accordance with a settlement agreement entered into on May 20, 2020 (Case No. 18-10752; Doc. 391).  FCB has also agreed to vote its claim in favor of the Debtor's plan as well as in the plans of the related debtors – Endo Surgical Center of North Jersey, P.C. (Case No. 18-10753)[1] and William Focazio, MD, P.A. (Case No. 18-10752) (collectively, all three cases are referred to as the "Debtors")[2].  FCB is secured by all or substantially all of the Debtors' assets.  In addition, FCB has a substantial unsecured claim in all of the Debtors' cases.

- TAX CLAIMS - Per the  Internal Revenue Service ("IRS") and State of New Jersey, Division of Taxation proofs of claim for taxes, they are owed as follows:  IRS – POC #9 in the amount of $551,813.43 with priority of $203,816.08; and State of NJ POC #16 in the amount of $428,745.09 with a priority of $217,197.64.  Debtor believes such tax claims total approximately $210,000.[3]  Such claims shall receive an initial payment of $25,000 on the date of confirmation and thereafter leaves $185,000.  Claims shall receive equal monthly installments over sixty (60) months of $3,083 per month.  The initial $25,000 payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[4]

- ADMINISTRATIVE CLAIMS – It is estimated that the Chapter 11 Trustee and his professionals' fees total $200,000.  Such claims include prior counsel for the Debtor, John P. DiIorio; Walsh Pizzi O'Reilly Falanga, counsel to the Chapter 7 Trustee[5]; Edward A. Phillips, Chapter 7 Trustee; Eisner Amper, LLP, accountant for Chapter 7 Trustee; Integrated Property Group, LLC d/b/a Auction Advisors, and broker to Chapter 7 Trustee.  SM Law PC shall be paid $20,000 at confirmation from non-debtor funds.  Initial Payment of $50,000 to administrative professional creditors upon confirmation of the Plan leaves a balance of $150,000[6] to be paid over sixty (60) months in equal monthly installments of $2,500.  The initial payment shall be made by the Management Company and the sixty (60) monthly payments thereafter shall be funded by the Reorganized Debtor and the Management Company on an as needed basis.  Quarterly fees shall be paid in full at confirmation.

- UNSECURED CREDITORS - Unsecured creditors are owed approximately $2,851,000[7].  Unsecured creditors shall be paid pro rata of $150,000 of their allowed

---

[1] Cases are jointly administered in Case No. 18-10752.
[2] The claims in the Debtors' cases are virtually similar so payments in one case may be utilized to pay off debt in another case.
[3] Debtor believes approximately $210,000 is owed in taxes.
[4] The Management Company is committing up to $1 million to, among other things, assist the Debtor in operations, expand its business, hire new employees  and fund its plan.
[5] The Trustee is holding $20,000 which will be utilized for his and his professionals upon confirmation.
[6] $25,000 out of the $75,000 payment is fore Debtor's new counsel, SM Law.
[7] Claims total approximately $5,851,000, however, Allstate New Jersey Property and Casualty Insurance, Claim

claims over eight (8) years on a monthly basis for a monthly payment of $1,562.50. Payments will be made by the Reorganized Debtor and/or Management Company on an as needed basis.

- EQUITY – Dr. William Focazio shall retain his ownership interest.

- MANAGEMENT AGREEMENT

  Endo and MD PA (defined herein) are entering into a management agreement ("Management Agreement") with RJ Capital Med, LLC ("RJ Capital" or the "Management Company") to provide operational cash and payment to certain creditors on an as needed basis. It will also work with the Debtor and provide capital to expand operations. RJ Capital is also providing funds for the initial distribution under the Debtor's Plan.    RJ Capital is owned and operated by Rudy Abramov. Neither RJ Capital nor Mr. Abramov or any entity he owns, or controls has a relationship with the Debtors or Dr. Focazio, individually or any owned or controlled by or affiliated with Dr. Focazio

The terms of the Management Agreement are as follows:

- Management Company to pay $25,000 towards priority tax claims and $50,000 towards administrative expenses are set forth above.
- Unsecured creditors are to be paid $150,000 pro rata on their allowed claims over eight (8) years on a monthly basis in the amount of $1,562.50. Payments will be made by the Reorganized Debtor through operations and/or Management Company as required; and
- Management Company will  contribute up to $1 million to assist Endo and MD PAS with their operational needs, fund certain payments under the Plan, expand Endo's and MD PA's businesses and increase revenues. The Management Company shall receive a monthly management fee of sixty percent (60%) from net profits from Endo and MD PA.

---

No. 22, will be treated through Endo Surgical's plan.

## ARTICLE 1: HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR.

### 1.1. Nature of the Debtor's Business.

The Debtor is an individual and not a business.

### 1.2. History of Business Operations of the Debtor

Prior to and since the filing date, the Debtor has had difficulty paying his debts as they come due to, among other things, Endo's and MDPA's operational and infrastructure issues in collecting past due accounts receivables.

Due to COVID-19, Endo's and MDPA's operations ceased as a result of the State of New Jersey shuttering all elective surgeries. During the shutdown, Dr. Focazio registered to volunteer and his services to confront the pandemic. Dr. Focazio was not called into service by the State of New Jersey to assist in the pandemic, however, he was on standby and ready, willing and able to help in any manner required. Moreover, Dr. Focazio inventoried his medical equipment including ventilators to prepare to help patients at his surgery center. Further, he prepared his surgical units to assist any Covid-19 patients requiring life-saving care. Thus, due to the pandemic, Dr. Focazio could not generate any funds through Endo and MD PA. Now, however, Dr. Focazio is generating revenues by conducting extensive COVID testing and is again performing elective surgeries. Suffice to say, operations are resuming in the ordinary course of business. The Debtor anticipates a rash of new business since many patients put surgeries on hold during the pandemic.

Dr. Focazio has successfully obtained a pool of potential new clients. For example, he has contracted with several doctors and surgeons which will increase the Debtor's profits. One doctor will perform bariatric surgery as well as general surgery. Another will perform endoscopy's and hiatal hernia repairs. A third doctor will perform joint and orthopedic treatments. A fourth doctor will perform pain treatment. Further, since the Management Company will be overseeing operations, it allows Dr. Focazio to perform more surgeries and avoid administrative duties. The Management Company is also bringing in other doctors to increase revenues.

### 1.3. Filing of the Debtor's Chapter 11 Case.

On January 15, 2019, the Debtor filed a voluntary petition for relief under the Bankruptcy Code. The Chapter 11 case is pending in the Bankruptcy Court in Newark, New Jersey. Dr. Focazio has also filed companion case known as In re William Focazio, MD, PA, Case No. 18-10752-VFP ("MD PA") and Endo Surgical Center of North Jersey, P.C., Case No. 18-10753-VFP ("Endo"). Both the MD PA and Endo cases are in chapter 11. On August 12, 2020, Endo's and MD PA's petitions have been amended to Subchapter V – Small Business Debtor Reorganization.

### 1.4. Legal Structure and Ownership.

The Debtor is a gastroenterology specialist operating in Clifton, New Jersey.

7

### 1.5. Debtor's Assets.

<u>Property</u>

The Debtor owns real property located at 41A Inlet Drive, Block 175, Lot 2501, Point Pleasant Beach, New Jersey 08742 (the "Point Pleasant Property"); 43 Inlet Drive, Point Pleasant Beach, New Jersey 08742 (the "Second Point Pleasant Property"); 66 Westview Road, Wayne, New Jersey 07470 (the "Wayne Property")[8]; and although 41 Arthur Street, East Brunswick, New Jersey 08816 (the "East Brunswick Property") was listed on the Debtor's petition, the Debtor no longer owns the East Brunswick Property.

The Point Pleasant Property and Second Point Pleasant Property are currently vacant "lots" due to Hurricane Sandy's destruction of the improvements thereon. The Wayne Property is a single-family home valued at $650,000. The East Brunswick Property was an investment property valued at $4,700,000.

<u>Vehicles</u>

The Debtor owns the following vehicles:

- 2005 Bentley GT valued at $50,500;
- 2005 Cadillac DeVille valued at $6,000;
- 2008 S Mercedes valued at $12,862;
- 2007 Ford F250 valued at $2,000; and
- Nissan Morano valued at $2,000

<u>Household</u>

The Debtor owns certain household items valued at approximately $100,000; clothing valued at approximately $3,000; and jewelry valued at approximately between $6,000 to $27,000.[9]

The Debtor is holding $18,782.00 in cash.[10]

---

[8] Carrington Mortgage holds a mortgage on the Wayne Property. The Debtor has a proposed purchaser for this property. The Wayne Property is undersecured.
[9] For a list of the jewelry, the Debtor refers to the *Notice of Inventory of Items Removed By Trustee From Debtor's Residence* filed on July 14, 2020 (ECF No. 178). The Debtor reserves all rights as to this value insofar as the Chapter 11 Trustee has not provided the Debtor with a comprehensive list of each item seized and in the Chapter 11 Trustee's possession.
[10] See Monthly Operating Report filed August 18, 2020 for the reporting period June 1, 2020 to June 30, 2020 (Doc. No. 18).

Interest

The Debtor holds 100% ownership in the following entities (most if not all of the entities no longer exist or have little to no value):

- Fox Hedge Manor, LLC;
- Endo Surgical Center of North Jersey, P.C.;
- DVCO, LLC;
- William Focazio MD, PA;
- North Jersey Consulting Group;
- Metropolitan Anesthesia Associates, P.C.;
- Crosstown Medical P.C.;
- Riverwood Surgical Center, LLC;
- Arthur Realty, LLC;
- Arthur St. Realty, LLC;
- Crosstown Medical, P.A.;
- North Jersey Consulting Medical Group; and
- 1% interest in William J. Focazio 2012 Family Trust.

## 1.6. Debtor's Liabilities.

- SECURED CLAIMS –First Commerce Bank ("FCB") is owed in excess of $7,671,243.94, however, FCB's claim is contingent and shall be waived and released in accordance with a settlement agreement entered into on May 20, 2020 (Case No. 18-10752; Doc. 391). FCB has also agreed to vote its claim in favor of the Debtor's plan as well as in the plans of the related debtors – Endo Surgical Center of North Jersey, P.C. (Case No. 18-10753) and William Focazio, MD, P.A. (Case No. 18-10752) (collectively, all three cases are referred to as the "Debtors")[11]. FCB is secured by all or substantially all of the Debtors' assets. In addition, FCB has a substantial unsecured claim in all of the Debtors' cases.

- TAX CLAIMS – Per the Internal Revenue Service ("IRS") and State of New Jersey, Division of Taxation proofs of claim for taxes, they are owed as follows: IRS – POC #9 in the amount of $551,813.43 with priority of $203,816.08; and State of NJ POC #16 in the amount of $428,745.09 with a priority of $217,197.64. Debtor believes such tax claims total approximately $210,000.[12] Such claims shall receive an initial payment of $25,000 on the date of confirmation and thereafter leaves $185,000. Claims shall receive equal monthly installments over sixty (60) months of $3,083 per month. The initial $25,000 payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[13]

---

[11] The claims in the Debtors' cases are virtually similar so payments in one case may be utilized to pay off debt in another case.

[12] Debtor believes approximately $210,000 is owed in taxes.

[13] The Management Company is committing up to $1 million to, among other things, assist Endo and MD PA to fund operations, expand its business, hire new employees and fund its plan.

- ADMINISTRATIVE CLAIMS - It is estimated that the Chapter 11 Trustee and his professionals' fees total $200,000. Such claims include prior counsel for the Debtor, John P. DiIorio in the amount of $8,758.40; Walsh Pizzi O'Reilly Falanga, counsel to the Chapter 7 Trustee; Edward A. Phillips, Chapter 7 Trustee; Eisner Amper, LLP, accountant for Chapter 7 Trustee; Integrated Property Group, LLC d/b/a Auction Advisors, broker to Chapter 7 Trustee. SM Law PC shall be paid $20,000 at confirmation. Initial Payment of $50,000 to administrative professional creditors upon confirmation of the Plan leaves a balance of $150,000[14] to be paid over sixty (60) months in equal monthly installments of $2,500. The initial payment shall be made by the Management Company and the sixty (60) monthly payments thereafter shall be funded by the Reorganized Debtor and the Management Company on an as needed basis. Quarterly fees shall be paid in full at confirmation

- UNSECURED CREDITORS – Unsecured creditors are owed approximately $2,851,000[15]. Unsecured creditors shall be paid pro rata of $150,000 of their allowed claims over eight (8) years on a monthly basis for a monthly payment of $1,562.50. Payments will be made by the Reorganized Debtor and/or Management Company on an as needed basis.

### 1.7. Current and Historical Financial Conditions.

Attached as Exhibit A is the Debtor's Monthly Operating Report for June 2020.

The Debtor firmly believes it can return to its former profitability by, among other things, seeking assistance of the Management Company to fund operations, provide working capital and expand operations.

The Debtor is confident that with the Management Company he can return to his former revenues and profits and grow exponentially.

### 1.8. Events Leading to the Filing of the Bankruptcy Case.

### A.    First Commerce Bank

On February 27, 2020, Endo Surgical, along with Focazio MD PA, filed a Motion (I) Approving Settlement and Compromise Pursuant to 11 U.S.C. § 105(A) and Fed. R. Bankr. P. 9019; (II) Permitting Debtor to Enter Into Modified Leases; (III) Resolving First Commerce Bank's Claims; and (IV) Granting Related Relief (the "Settlement Motion"). The Settlement Motion approved a forbearance agreement and deed-in-lieu of foreclosure agreement. Approval of the settlement was a major part of the Debtor moving forward with its plan of reorganization. Significantly, the settlement calls for a release of over $7 million in secured claims as long as the settlement is adhered to.

---

[14] $20,000 out of the $75,000 payment is for Debtor's new counsel, SM Law PC.
[15] Claims total approximately $5,851,000. However, Allstate New Jersey Property and Casualty Insurance, Claim No. 22, will be treated through Endo Surgical's plan.

FCB, the Debtor, and the various non-debtor and debtor persons and entities (including Focazio MD PA and Dr. Focazio, individually) indebted to FCB on account of the Loans and other obligations, the parties, including the Debtor, have agreed upon terms which are set forth in the Agreement. Such terms release substantial claims against several parties.

Specifically, in connection with the Agreement (including the releases of FCB and FCB related persons and entities set forth therein), the following was approved: (a) Leases between FCB and the Debtor will be modified to: (i) fix the rents payable to FCB; (ii) provide for the termination of the Leases upon the maturity of the Agreement; (c) authorize the Tenant(s) to commence the modified Lease payments directly to FCB; (d) approve agreements between FCB and the Debtor concerning the allowance and treatment of FCB's claims; (e) FCB agrees to vote in favor of the Debtor's and affiliates plans of reorganization. Most significantly, the settlement authorized the Debtor to remain at the Property under a two-year lease with an option to acquire the Property. The right to acquire the property is also a significant inducement to the Management Company since it may want to partner with Dr. Focazio and/or Debtors to acquire an interest in the property at 999 Clifton Ave., Clifton, New Jersey. This allows the Debtor to maintain its on-going business in the same space without any moving and renovation costs.

### 1.9. Significant Events During the Bankruptcy Case.

On January 24, 2019, the Debtor filed an application to approve the retention of Scura Wigfield ("Scura Wigfield") as counsel. Doc. No. 12. On February 19, 2019, the Debtor filed an application to approve the retention of Kenneth S. Thyme as special counsel. Doc. No. 31.

On May 13, 2019, an Order was entered directing the appointment of a Chapter 11 Trustee. Doc. No. 69. On May 17, 2019, Edward A. Phillips was appointed as Chapter 11 Trustee (the "Trustee"). Doc. No. 73. An Order approving the appointment of the Chapter 11 Trustee was entered on May 29, 2019. Doc. No. 78.

On May 30, 2019, Walsh Pizzi O'Reilly Falanga filed an application to be retained as counsel to the Trustee. Doc. No. 79. Walsh Pizzi was approved as counsel to the Trustee on June 7, 2019. Doc. No. 86.

On May 30, 2019, the Trustee filed an application to retain Eisner Amper, LLP ("Eisner") as the Trustee's accountant. Doc. No. 80. Eisner was appointed as the Trustee's accountant on June 7, 2019. Doc. No. 87.

On June 25, 2019, Scura Wigfield filed a Motion to Withdraw as Debtor's counsel. Doc. No. 93. This motion was withdrawn.

On August 2, 2019, John P. Di Iorio substituted in for Scura Wigfield as Debtor's counsel. Doc. No. 98.

11

On October 27, 2019, the Trustee filed an application to retain Integrated Property Group, LLC d/b/a Auction Advisors ("Auction Advisors") as the Trustee's broker / auctioneer. Doc. No. 119. Auction Advisors was granted as the Trustee's broker on November 25, 2019. Doc. No. 131.

On January 3, 2020, Allstate New Jersey Property and Casualty Insurance Company ("Allstate") filed an adversary complaint against the Debtor. See Adv. No. 20-01004.

On February 10, 2020, the Office of the United States Trustee filed a motion to covert the Debtor's case to Chapter 7 (the "Conversion Motion"). Doc. No. 140. The Debtor filed a cross-motion to dismiss his case (the "Cross-Motion") on March 10, 2020. Doc. No. 146. The Conversion Motion and Cross-Motion have been adjourned several times and is currently scheduled for October 8, 2020.

On February 11, 2020, John P. Di Iorio filed a motion to withdraw as Debtor's counsel. Doc. No. 141. This motion was granted on April 2, 2020. Doc. No. 156.

On April 5, 2018, FCB, Arthur Street,[16] Dr. Focazio,[17] Riverwood Surgical,[18] DVCO,[19] Focazio MD PA, Metropolitan,[20] Fox Hedge Manor, LLC ("Fox Hedge"),[21] and Endo Surgical (collectively, the "Obligors") entered into a forbearance agreement (the "First Forbearance").

In the First Forbearance, DVCO, as well as other Obligors, acknowledged $12,928,803.14 total indebtedness due and owing to FCB as of March 1, 2018. The Obligors, in exchange for a period of forbearance, agreed to make certain payments to FCB.

DVCO, as well as other obligors, received a credit of $4,700,000 reducing the indebtedness due to FCB as a result of transferring the Arthur Street property to FCB's designee through a deed-in-lieu of foreclosure. After the Arthur Street transaction, the amount owed by the Debtor and other debtor and non-debtor entities was close to $8 million. Such debt to FCB was secured by and cross-collateralized (and cross-default provisions) by all or substantially all of the Debtors' assets.

FCB has agreed to forbear from exercising its rights under the First Forbearance provided that DVCO and Obligors comply with the terms of the FCB Settlement (as described herein).

On July 14, 2020, the Chapter 11 Trustee filed a *Notice of Inventory of Items Removed By Trustee From Debtor's Residence* (Doc. No. 178). As of the time of the filing of this

---

[16] Non-debtor company owned by Dr. Focazio.

[17] Dr. Focazio filed a Chapter 11 bankruptcy on January 15, 2019, Case No. 19-10880.

[18] Non-debtor company owned by Dr. Focazio.

[19] Non-debtor company owned by Dr. Focazio.

[20] Non-debtor company owned by Dr. Focazio.

[21] Fox Hedge filed a Chapter 11 bankruptcy on August 9, 2019, Case No. 19-25457. Fox Hedge's case was dismissed on October 10, 2019.

proposed Plan, an appraisal and pictures of said inventory was requested by the Debtor but the appraisal and pictures have not yet been provided to the Debtor.

On August 12, 2020, the Debtor's affiliated entity, William Focazio MD, P.A. filed its proposed Subchapter V Plan in the bankruptcy case captioned In re William Focazio, MD, P.A. (Case No. 18-10752)(VFP) (See Doc. No. 403 in that bankruptcy case).

In addition, on August 12, 2020, the Debtor's other affiliated entity, Endo Surgical Center of North Jersey, P.C. filed its proposed Subchapter V Plan in the bankruptcy case captioned In re Endo Surgical Center of North Jersey, P.C. (Case No. 18-10753)(VFP) (See Doc. No. 404 in that bankruptcy case).

On August 31, 2020, the Trustee filed an application to retain Auction Advisors as the Trustee's broker / auctioneer. Doc. No. 183. Auction Advisors was granted as the Trustee's broker on September 10, 2020. Doc. No. 185.

## 2020 Forbearance Agreement and Settlement with FCB

On January 24, 2020, FCB and DVCO entered into a Forbearance and Deed-in-Lieu of Foreclosure Agreement (the "Agreement").

FCB agreed to accept a deed-in-lieu of foreclosure of the Property in partial fulfillment of the outstanding indebtedness.[22] Title to the Property has been conveyed by DVCO to FCB.

FCB has agreed to lease the Property to Focazio MD PA or Endo Surgical or an affiliate (collectively, if applicable, the "Tenant(s)") approved by FCB. The period of this tenancy will be for no longer than two (2) years. Extensions of the lease term must be mutually agreed by DVCO, Tenant(s), and FCB. If the buy-back option is not exercised (as described herein), Tenant(s) will promptly vacate the premises at the expiration of the term leaving the premises in "broom clean" condition. Focazio MD PA and Endo Surgical can vacate at any time before the two-year option and as long as they have not defaulted under the settlement Agreement, FCB waives and releases any and all claims.

The Tenant(s) (Focazio MD PA and Endo Surgical) will be required to pay monthly rent of $10,000 for the first (6) months of its tenancy (commencing February 15, 2020)[23]; $12,500 for months (7) thru (12); $15,000 for months (13) thru (18) and; $17,500 for months (19) thru (24). Tenant shall pay all utility costs incurred at the Property. Tenant(s) will be further required to maintain insurance on the Property and pay a property tax escrow of $5,000 commencing with the May 1, 2020, payment and every month thereafter throughout

---

[22] As set forth more fully herein, the terms and conditions of the FCB Settlement and Agreement, FCB agrees to waive and release the remainder of its claims against all parties obligated under the Loan. Such parties include, but not limited to Dr. Focazio individually and Focazio MD PA, both Debtors. The Settlement was a key component to filing the plans in all three Debtors' cases. The waiver of over $8 million in secured and unsecured claims paved the way to file such plans.

[23] The earlier payments were deferred because of COVID-19.

the remainder of the term.  DVCO and Tenant(s) shall provide that the Property is continuously insured against loss and casualty.  A separate lease agreement will be prepared for execution between FCB and Tenant(s).  Tenant(s) shall not be permitted to sublease any portion of the Property without FCB's consent.

DVCO and FCB agreed to a purchase option agreement providing DVCO with the right to purchase the subject property back from FCB as follows:

- $3,200,000 if purchase transaction closes within six (6) months from the date of the buy-back option or;
- $3,300,000 if purchase transaction closes more than six (6) months from the date of the buy-back option but less than twelve (12) months from the date of the buy-back option or;
- $3,400,000 if purchase transaction closes more than twelve (12) months from the date of the buy-back option but less than eighteen (18) months from the date of the buy-back option or;
- $3,500,000 if purchase transaction closes more than eighteen (18) months from the date of the buy-back option but less than twenty-four (24) months from the date of the buy-back option;
- Any rights that DVCO has under the buy-back option will expire twenty-four (24) months from the date of the buy-back option.  The buy-back option may not be exercised in the event there is any breach of the per month payment obligations or there is a breach of the option agreement; and
- At the end of this twenty-four (24) month period, FCB will have no obligation to sell the property back to the seller.  Once the option period expires, DVCO and its designee shall have no further rights concerning the property and shall quit the property.

FCB and DVCO acknowledge that the real estate taxes on the Property were in arrears.  FCB cured the arrearage for taxes due through the first half of 2020 on or before May 1, 2020.  The outstanding taxes previously paid on the Property by FCB (and any subsequent tax payments) will increase the amount required to be paid by DVCO to FCB to purchase the property under the buy-back option.  FCB will not release its liens on any of the collateral property securing the obligations in the names of Grantor, Riverwood Surgical, Fox Hedge, William Focazio, or related entities and related party judgment-Debtor during the pendency of the buy-back option period (unless the option is exercised).  FCB preserves its rights to foreclose and pursue its remedies under the foreclosure judgment.

If the buy-back option is not exercised, FCB will release remaining liens and claims, in the approximate amount of $5 million, against Obligors, including, DVCO, Riverwood Surgical , Fox Hedge, Focazio MD PA, Endo Surgical, and Dr. Focazio, individually, only if both: (a) Tenant(s) have vacated the premises leaving it in "broom clean" condition; and (b) DVCO has not defaulted under the terms of the Agreement.  If the buy-back option is exercised, FCB will release remaining liens and claims against Obligors, including, DVCO, Riverwood Surgical Center, Fox Hedge Manor, LLC, and Dr. Focazio in the approximate amount of $5 million (after a credit for the value of the Property) only if both: (a) Amounts

specified in Buy-Back Option section are received by DVCO within the timeframe specified in each clause; and (b) all taxes, insurance, sheriff fees, costs, and other charges incurred by DVCO are fully reimbursed to FCB. FCB will forbear from any further executions on outstanding judgments entered against Dr. Focazio and his related entities, including but not limited to Focazio MD and Endo Surgical, during the pendency of the buy-back option period, provided that Dr. Focazio and his related entities are not in default upon this agreement or prior forbearance agreement(s).

DVCO will have a twenty (20) day cure period for any payment due under the terms of the lease and buy-back agreement without notification from the grantor.

DVCO, Riverwood Surgical, Fox Hedge, Dr. Focazio, Endo Surgical, Focazio MD PA, and the related party judgment-Debtor shall indemnify, defend and hold FCB harmless for any and all claims made by the Passaic County Sheriff's Office for any fees, commissions, payment or other sums due, if any, to it concerning the sheriff sale or the Foreclosure Judgment obtained by FCB concerning the Property.

In bankruptcy cases of certain affiliates of DVCO (William Focazio MD PA, Endo-Surgical, and Dr. William Focazio, individually), as long as DVCO is not in default of the terms, FCB agrees to vote in favor of their plans that incorporates the terms of the Agreement (or agreements derived therefrom). Thus, as noted, FCB is the dominant creditor by far and its support and wavier of claims is critical to reorganize.

As a result of the settlement, FCB alleges it is owed approximately $8,277,966 as of December 31, 2019.

**On September 23, 2020, the Debtor amended his petition to a small business case under Subchapter V of Chapter 11. Such designation is crucial to confirming his plan.**

**On September 23, 2020, the Debtor's plan of reorganization was filed.**

### 1.10.    Projected Recovery of Avoidable Transfers [Choose option]

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

## <u>ARTICLE 2: THE PLAN.</u>

The Debtor's Plan must describe how its Creditors will be paid. Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a class or purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Code, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive. The Plan also states whether each

class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity Interest can be impaired if the Plan alters the legal, equitable or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan. A class that is not impaired is deemed to accept the Plan.

### 2.1. Unclassified Claims.

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.

As such, the Plan does not place the following Claims in any class:

### A. Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

1.    If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

2.    If the Debtor received goods it has purchased in the ordinary course of business within 20 days before the Petition Date, the value of the goods received is an Administrative Expense.

3.    Administrative Expenses also include any post-petition fees and expenses allowed to professionals, including the allowed claim of the Trustee for fees

16

and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 cases. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Expenses arising in the ordinary course of business after the Petition Date | None.[24] | Payment through the Plan as follows: Monthly payments over five (5) years: $0.00[25] |
| Administrative or Priority Tax Claim | Approximately $210,000 | Payment through the Plan as follows: Payments made over sixty (60) months with an initial payment of $25,000 |
| The value of goods received in the ordinary course of business within 20 days before the Petition Date | None | Payment through the Plan as follows: N/A |

---

[24] The Debtor has accrued post-petition utility bills in connection with his residence which he will vacate. Such utility bills will attach as liens to the property as in rem charges. The Debtor disputes any claim made by Wellcare, TCCM and/or Ms. Nancy Sullivan who may assert a claim against the Debtor for approximately $49,970.00. If such claim is valid, such debt would be claim in Endo and MD PA, not the Debtor's case.

[25] All payments under the plan commence on the 90th day after the plan becomes final and non-appealable. The initial payment shall be on the Effective Date.

17

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional fees, as approved by the Bankruptcy Court | Approximately $200,000[26]<br><br>Chapter 11 Trustee and his Counsel, Walsh Pizzi O'Reilly Falanga, LLP Total Approximately $200,000 | After Bankruptcy Court approval, Payment through the Plan as follows: Initial Payment of $50,000 to administrative professional creditors upon confirmation of the Plan and the balance paid over sixty (60) months in equal monthly installments. The initial payment shall be made by the Management Company and the sixty (60) monthly payments thereafter shall be funded through operations by the Reorganized Debtor and the Management Company on an as needed basis. |
| Clerk's Office fees | | Paid in full on the Effective Date. |
| Other Administrative Expenses | | Payment through the Plan as follows: |
| Office of the United States Trustee Quarterly Fees | Approximately $4,000[27] | Paid in full on Effective Date. |
| TOTAL | | |

### B. Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by § 507(a)(8) of the Code. Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding 5 years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

- Per the Internal Revenue Service ("IRS") and State of New Jersey, Division of Taxation proofs of claim for taxes, they are owed as follows: IRS – POC #9 in the amount of $551,813.43 with priority of $203,816.08; and State of NJ POC #16 in the amount of $428,745.09 with a priority of $217,197.64. Debtor believes such tax claims total approximately $210,000.[28] Such claims shall receive an initial payment

---

[26] SM Law PC will be paid $20,000 at confirmation of the plan by the management company, with additional fees and costs to be paid by non-Debtor sources outside the plan post-confirmation.

[27] See *Monthly Operating Report* for the reporting period June 1, 2020 to June 30, 2020 (Doc. No. 181).

[28] Debtor believes approximately $210,000 is owed in taxes.

18

of $25,000 on the date of confirmation and thereafter leaves $185,000. Claims shall receive equal monthly installments over sixty (60) months of $3,083 per month. The initial $25,000 payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[29]

Below are the priority tax claims:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service (POC 9) | $203,816.08[30] | | Such claims shall receive an initial pro rata payment of twenty-five thousand dollars ($25,000) on the date of confirmation and thereafter shall receive equal monthly installments over sixty (60) months. The initial pro rata payment shall be made by the Management Company (defined below) and thereafter the payments over sixty (60) months shall be funded by the Reorganized Debtor and/or the Management Company on an as needed basis.[31] |
| State of New Jersey, Division of Taxation (POC 16) | $217,197.64[32] | | Same treatment as above. |

**2.2. Classes of Claims and Equity Interests.**

---

[29] The Management Company is committing up to $1 million to, among other things, assist the Debtor in operations, expand its business, hire new employees and fund its plan.
[30] The total claim is $551,813.43.
[31] The Management Company is committing up to $1 million to assist the Debtor in operations and fund its plan.
[32] The total claim is $428,745.09.

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### A. *Classes of Secured Claims*

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under § 506 of the Code. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the debtor's principal residence, may require different treatment pursuant to § 1190(3) of the Code as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider (Yes or No) | Impairment | Treatment |
|---|---|---|---|---|
| 1 | First Commerce[33] Bank ("FCB") (POC 19) $8,277,966[34] | No | Yes | As noted above, claims are being waived and released if settlement complied with. |

### B. *Classes of Priority Unsecured Claims.*

Certain priority Claims that are referred to in §§ 507(a)(1), (4), (5), (6), and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The Debtor does not have any such claims.

### C. *Class[es] of General Unsecured Claims*

General unsecured Claims are not secured by property of the estate and are not entitled to priority under § 507(a) of the Code. [Insert description of §1122(b) convenience class if applicable.]

---

[33] In or around April 2018, the Debtor, amongst other entities, entered into a Forbearance Agreement with First Commerce Bank. Pursuant to the Agreement, the Debtor, amongst other parties, pay FCB a monthly payment of $34,286.68 for interest due and owing on all outstanding amounts of indebtedness.
[34] FCB filed its claim in the amount of $7,601,949.05, however, this amount is owed as of December 31, 2019.

The following chart identifies the Plan's proposed treatment of Class[es] through , which contain general unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | General Unsecured Class Total amount of claims (approximately $2,851,200[35]) = (this amount is still being determined in light of the fact that certain claims are subject to objection and reclassification).[36] | Yes | Unsecured creditors will be paid $150,000 pro rata payment over eight (8) years on a monthly basis in the amount of $1,562.50. Payments will be made by the Reorganized Debtor and/or Management Company. |

### D. Class[es] of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*i.e.,* equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are Equity Interest holders. In a partnership, Equity Interest holders include both general and limited partners. In a limited liability company ("LLC"), the Equity Interest holders are the members. Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest holder.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders: [There may be more than one class of Equity Interest holders in, for example, a partnership case, or a case where the prepetition debtor had issued multiple classes of stock.]

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| Dr. William Focazio | Equity Interest holder | unimpaired | Retain 100% equity |

### 2.3. Estimated Number and Amount of Claims Objections.

---

[35] As per the Claims Register in the Debtor's individual bankruptcy case, the general unsecured claims total approximately $5,851,201.14. However, the disputed claim of Allstate New Jersey Property and Casualty Insurance Claim No. 22 (claim amount $3,179,020.92) is being treated in Endo Surgical's plan.

[36] Includes State of New Jersey, Division of Employer Accounts (POC 3-1) in the amount of $60,164.36 due to the fact that FCB has a lien on all assets.

The Debtor may object to the amount or validity of any Claim within 60 days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. If and when a Disputed Claim is finally resolved by the allowance of the Claim in whole or in part, the Debtor will pay the Allowed Claim in accordance with the Plan. [Set forth amount and number of Claims in each class that will be objected to.]

The Debtor is still reviewing the claims and reserves his right to object to same.

| Class | Number of Claims Objected To | Amount of Claims Objected To |
|---|---|---|
| | Shapiro Croland Reiser Apfel & DiIorio | $8,758.40 |
| | Scura Wigfield Heyer & Stevens | $27,837.50 |
| | Tax Claims | |

### 2.4. Treatment of Executory Contracts and Unexpired Leases.

Executory Contracts are contracts where significant performance of the contract remains for both the Debtor and another party to the contract. The Debtor has the right to reject, assume (i.e. accept), or assume and assign these types of contracts to another party, subject to the Bankruptcy Court's approval. The paragraphs below explain the Debtor's intentions regarding its Executory Contracts (which includes its unexpired leases) and the impact such intentions would have on the other parties to the contracts.

**The agreement with FCB is an executory contract for the month to month lease and the option to buy is executory. See Doc. No. 391.**

Check all that apply:

[ ] Assumption of Executory Contracts.

The Executory Contracts shown on Exhibit B shall be assumed by the Debtor.

Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Bankruptcy Code, if any. Exhibit _____ also lists how the Debtor will cure and compensate the other party to such contract or lease for any such defaults.

If you object to the assumption of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ] Assumption and Assignment of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit shall be assumed by the Debtor and assigned to the party listed in that Exhibit. Assumption and assignment by the Debtor means that the Debtor will undertake the obligations under such contracts and unexpired leases, will cure defaults of the type that must be cured under the Bankruptcy Code, if any, and will assign the contract to the party listed.

If you object to the assumption and assignment of your unexpired lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of future performance, you must file and serve your objection to the assumption and assignment within the deadline for objecting to the confirmation of the Plan, unless the Bankruptcy Court has set an earlier time.

OR

[ ] Rejection of Executory Contracts and Unexpired Leases.

The Executory Contracts shown on Exhibit shall be rejected by the Debtor.

Further, the Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly shown on Exhibit , or not assumed before the date of the order confirming the Plan.

Rejection means that the Debtor has elected not to continue to perform the obligations under such contracts or leases. If the Debtor has elected to reject a contract or lease, the other party to the contract or lease will be treated as an unsecured Creditor holding a Claim that arose before the bankruptcy was filed.

**[The Deadline for Filing a Proof of Claim Based on a Claim Arising from the Rejection of an Executory Contract Is** _____. Any Claim based on the rejection of an Executory Contract will be barred if the proof of claim is not timely filed, unless the Bankruptcy Court orders otherwise.]

### 2.5. Means for Implementation of the Plan.

The Reorganized Debtor is entering into a management agreement with RJ Capital to provide capital as needed and for operations.

The terms of the Management Agreement are as follows:

- Management Company to pay $25,000 towards priority tax claims and $75,000 towards administrative expenses are set forth above.
- Unsecured creditors are to be paid $150,000 pro rata on their allowed claims over eight (8) years on a monthly basis in the amount of $1,562.50. Payments will be

made by the Reorganized Debtor through operations and/or Management Company as required; and

- Management Company is committed to contribute up to $1 million to assist the Debtor with its operational needs fund certain payments under the Plan, expand Debtor's business and increase revenues.. The Management Company shall receive a monthly management fee of sixty percent (60%) from net profits.

On Confirmation of the Plan, all property of the Debtor, tangible and intangible, including, without limitation, licenses, furniture, fixtures and equipment, will revert, free and clear of all Claims and Equitable Interests except as provided in the Plan, to the Debtor. The Debtor expects to have sufficient cash on hand to make the payments required on the Effective Date.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

**2.6. Payments.**

If the Plan is confirmed under §1191(a), payments to Creditors provided for in the Plan will be made by the Trustee pursuant to §1194(a). Once the Trustee's service is terminated under § 1183(c), the Debtor shall make Plan payments except as otherwise provided in the Plan or in the order confirming the Plan.

If the Plan is confirmed under section § 1191(b), except as otherwise provided in the Plan or in the order confirming the Plan, the Trustee shall make all Plan payments to creditors under the Plan.

**2.7. Post-Confirmation Management.**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| RJ Capital | Manager | 60% of Net Profits |
| Dr William Focazio | Physician/Owner/Operator | $370,000.00 |

**2.8. Tax Consequences of the Plan.**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, And/Or Advisors.*

24

The following are the anticipated tax consequences of the Plan: There will be different tax consequences for different individuals and entities, however, generally a cash basis taxpayer will recognize income to the extent they received funds.

**2.9. Projections in Support of Debtor's Ability to Make Payments Under the Proposed Plan**

Debtor has provided projected financial information. Those projections are listed in Exhibit C.

## ARTICLE 3: FEASIBILITY OF PLAN.

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

**3.1. Ability to Initially Fund Plan.**

The Debtor believes that he will have enough cash on hand on the Effective Date of the Plan to pay all the Claims and expenses that are entitled to be paid on that date. Tables showing the amount of cash on hand on the Effective Date of the Plan, and the sources of that cash, are attached hereto as Exhibit D. The management company will be paying $75,000 on confirmation.

**3.2. Ability to Make Future Plan Payments And Operate Without Further Reorganization.**

The Debtor must submit all or such portion of the future earnings or other future income of the Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

The Debtor has provided projected financial information. Those projections are listed in Exhibit C (referenced in § 2.9, above).

**You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.**

## ARTICLE 4: LIQUIDATION ANALYSIS.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit E.

## ARTICLE 5: DISCHARGE.

**5.1. [Option 1 -- If § 1141(d)(3) is not applicable]**

Discharge. **If the Plan is confirmed under § 1191(a),** on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under § 1191(b),** as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

**[Option 2– If § 1141(d)(3) is applicable]**

No Discharge. In accordance with § 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

NOTE: If the Debtor is not entitled to discharge under 11 U.S.C. § 1141(d)(3) change this heading to **"NO DISCHARGE OF DEBTOR."**

## ARTICLE 6: GENERAL PROVISIONS.

### 6.1. Title to Assets.

If a plan is confirmed under § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 6.2. Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named

or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 6.3. Severability.

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 6.4. Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under section 1193; (iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 6.5. Captions.

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 6.6. Modification of Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan pursuant to § 1193(a). However, the Bankruptcy Court may require additional items including revoting on the Plan.

If the Plan is confirmed under Section 1191(a), the Debtor may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Section 1191(b), the Debtor may seek to modify the Plan at any time only if (1) it is within 3 years of the Confirmation Date, or such longer time not to exceed 5 years, as fixed by the court *and* (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

### 6.7. Final Decree.

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Bankruptcy Court shall designate in the Plan Confirmation Order, shall file a motion with the Bankruptcy Court to

obtain a final decree to close the case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

## ARTICLE 7: ATTACHMENTS.

The following documents accompany the Plan [check those applicable, and list any other attachments here]:

[ ]    Debtor's Assets at Fair Market Value, annexed as Exhibit ___.

[ ]    Debtor's Liabilities, annexed as Exhibit ___.

[x]    Financial forecast for the Debtor, annexed as Exhibit B.

[x]    Debtor's most recent financial statements issued before bankruptcy, annexed as Exhibit A.

[ ]    Debtor's most recent post-petition operating report filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[ ]    Summary of the Debtor's periodic operating reports filed since the commencement of the Debtor's bankruptcy case, annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases, to be Assumed annexed as Exhibit B.

[ ]    Executory Contracts and Unexpired Leases to be Assumed and Assigned, annexed as Exhibit ___.

[ ]    Executory Contracts and Unexpired Leases to be Rejected, annexed as Exhibit ___.

[x ]    Tables showing the amount of cash on hand as of the Effective Date, and the sources of that cash, annexed as Exhibit C.

[ x]    Liquidation Analysis, annexed as Exhibit D.

## ARTICLE 8: FREQUENTLY ASKED QUESTIONS.

**What Is the [DEBTOR] Attempting to Do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why Am I Receiving This Plan?** In order to confirm a plan of reorganization [or liquidation], the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How Do I Determine Which Class I Am In?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. [Paragraph/Section] lists all classes of claimants and their types of claims.

**Why Is Confirmation of a Plan of Reorganization [or Liquidation] Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What Is Necessary to Confirm a Plan of Reorganization [or Liquidation]?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPARIED under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I Am in an Impaired Class?** [Section/Paragraph] of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by

which ballots must be returned is . Ballots should be mailed to the following address: [INSERT ADDRESS].

**How Do I Determine When and How Much I Will Be Paid?** In [Section/Paragraph] , the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

## ARTICLE 9: DEFINITIONS.

**9.1.**    The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Code are used in this Plan.  The definitions that follow that are found in the Code are the convenience of reference only, and are superseded by the definitions found in the Code.

**9.2.    Administrative Claimant:** Any person entitled to payment of an Administration Expense.

**9.3.    Administrative Convenience Class:** A class consisting of every unsecured claim that is less than or reduced to an amount that the Bankruptcy Court approves as reasonable and necessary for administrative convenience.

**9.4.    Administrative Expense:** Any cost or expense of administration of the Chapter 11 case entitled to priority under Section 507(a)(2) of the Code and allowed under Section 503(b) of the Code, including without limitation, any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the allowed claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against any of the Debtor's estates under Chapter 123, Title 28, United States Code.

**9.5.    Administrative Tax Claim:** Any tax incurred pursuant to Section 503(b)(1)(B) of the Code.

**9.6.    Allowed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code to the extent that: (a) a Proof of Claim was either timely filed or was filed late with leave of the Bankruptcy Court or without objection by the Debtor, and (b) as to which either (i) a party in interest, including the Debtor, does not timely file an objection, or (ii) is allowed by a Final Order.

**9.7.    Allowed Priority Tax Claim:** A Priority Tax Claim to the extent that it is or has become an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.8.    Allowed Secured Claim:** Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under § 506 of the Code

**9.9.    Allowed Unsecured Claim:** An Unsecured Claim to the extent it is, or has become, an Allowed Claim, which in any event shall be reduced by the amount of any offsets, credits, or refunds to which the Debtor or Debtor-in-Possession shall be entitled on the Confirmation Date.

**9.10.    Bankruptcy Code or Code:** The Bankruptcy Reform Act of 1978, as amended and codified as Title 11, United States Code.

**9.11.    Bankruptcy Court:** The United States Bankruptcy Court for the District of New Jersey.

**9.12.    Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure.

**9.13.    Cash:** Cash, cash equivalents and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**9.14.    Chapter 11 Case:** This case under chapter 11 of the Bankruptcy Code in which William J.Focazio is the Debtor-in-Possession.

**9.15.    Claim:** Any "right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured." 11 U.S.C. § 101(5).

**9.16.    Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

**9.17.    Confirmation:** The entry by the Bankruptcy Court of an order confirming this Plan.

**9.18.    Confirmation Date:** The Date upon which the Bankruptcy Court shall enter the Confirmation Order; provided however, that if on motion the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the entry of the Final Order vacating such stay or the date on which such stay expires and is no longer in effect.

**9.19.    Confirmation Hearing:** The hearing to be held on , 20 to consider confirmation of the Plan.

**9.20.    Confirmation Order:** An order of the Bankruptcy Court or any amendment thereto confirming the Plan in accordance with the provisions of chapter 11 of the Bankruptcy Code.

31

**9.21.    Creditor:** Any person who has a Claim against the Debtor that arose on or before the Petition Date.

**9.22.    Debtor** and **Debtor-in-Possession:** William J. Focazio, the debtor-in-possession in this Chapter 11 Case.

**9.23.    Disputed Claim:** Any claim against the Debtor pursuant to Section 502 of the Code that the Debtor has in any way objected to, challenged or otherwise disputed.

**9.24.    Distributions:** The property required by the Plan to be distributed to the holders of Allowed Claims.

**9.25.    Effective Date:** Pursuant to D.N.J. LBR 3020-1, the effective date of a chapter 11 plan is 3 days after entry of the order confirming the plan unless the plan or confirmation order provides otherwise.

**9.26.    Equity Interest:** An ownership interest in the Debtor.

**9.27.    Executory Contracts:** All unexpired leases and executory contracts as described in Section 365 of the Bankruptcy Code.

**9.28.    Final Order:** An order or judgment of the Bankruptcy Court that has not been reversed, stayed, modified or amended and as to which (a) any appeal that has been taken has been finally determined or dismissed, or (b) the time for appeal has expired and no notice of appeal has been filed.

**9.29.    IRC:** The Internal Revenue Code filed.

**9.30.    Petition Date:** January 15, 2019, the date the chapter 11 petition for relief was

**9.31.    Plan:** This Plan, either in its present form or as it may be altered, amended, or modified from time to time.

**9.32.    Priority Tax Claim:** Any Claim entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

**9.33.    Reorganized Debtor:** The Debtor after the Effective Date.

**9.34.    Schedules:** Schedules and Statement of Financial Affairs, as amended, filed by the Debtor with the Bankruptcy Court listing liabilities and assets.

**9.35.    Secured Creditor:** Any creditor that holds a Claim that is secured by property of the Debtor.

**9.36.    Trustee:** [NAME], the trustee appointed pursuant to 11 U.S.C. § 1183(a) and whose duties are prescribed under 11 U.S.C. 1183(b), the Plan, or the order confirming the Plan.

**9.37.**    **Unsecured Creditor:** Any Creditor that holds a Claim in the Chapter 11 case which is not a secured Claim.

Respectfully submitted,

SM LAW PC
*Counsel to William J. Focazio*
*Chapter 11 Debtor*

Dated: September 23, 2020                By:___*/s/ Marc D. Miceli*_____
STEVEN MITNICK
MARC D. MICELI

EXHIBIT A – JUNE 2020 Monthly Operating Report

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1. 2020 - June 30. 2020

## MONTHLY OPERATING REPORT
## (INDIVIDUAL WAGE EARNERS)

File with Court and submit copy to United States Trustee within 20 days after end of month

Submit copy of report to any official committee appointed in the case.

| Required Documents | Form No. | Document Attached | Explanation Attached |
|---|---|---|---|
| Schedule of Cash Receipts and Disbursements | MOR-1 (INDV) | X | |
| Bank Reconciliation (or copies of debtor's bank reconciliations) | MOR-1a | X | |
| Copies of bank statements | | X | |
| Cash disbursements journals | MOR -Disbursements | X | |
| Statement of Operations | MOR-1 (INDV) | X | |
| Balance Sheet | MOR - 3 | X | |
| Status of Postpetition Taxes | | N/A | |
| Copies of IRS Form 6123 or payment receipt | | N/A | |
| Copies of tax returns filed during reporting period | | N/A | |
| Summary of Unpaid Postpetition Debts | | N/A | |
| Listing of aged accounts payable | | N/A | |
| Accounts Receivable Reconciliation and Aging | | N/A | |
| Debtor Questionnaire | MOR - 5 | X | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that the documents attached to this
report are true and correct to the best of my knowledge and belief.

_____
Signature of Chapter 11 Trustee

_____
Date

8/18/20
_____
Date

*The Trustee was appointed by Court Order on May 17, 2019. The information contained herein is based on the Trustee's accountant's analysis of
the Debtor's bank statements and financing information made available to the Trustee. The Trustee takes no responsibility for the accuracy of the
Debtor's information and reserves all rights in connection therewith.

FORM MOR (INDV)
(9/99)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1, 2020 - June 30, 2020

## INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS
( This Form must be submitted for each Bank Account maintained by the Debtor)

Amounts reported should be per the debtor's books, not the bank statement. The beginning cash should be the ending cash from the prior month or, if this is the first report, the amount should be the balance on the date the petition was filed. Attach the bank statements and a detailed list of all disbursements made during the report period that includes the date, the check number, the payee, the transaction description, and the amount. A bank reconciliation must be attached for each account. (See MOR-1 (INDV) (CONT))

| | Trustee's Account 8981 | Cumulative Filing to Date |
|---|---|---|
| Cash - Beginning of Month (June 1, 2020) | 18,782 | 9,304 |
| **RECEIPTS** | | |
| Wages / Distributions | - | 205,000 |
| Account Transfer | - | 5,000 |
| Alimony and Child Support | - | - |
| Miscellaneous Deposits | - | 78,986 |
| Other Income (attach schedule) | 4,000 | 92,023 |
| Miscellaneous Income | - | 5,080 |
| **Total Receipts** | 4,000 | 386,089 |
| **DISBURSEMENTS** | | |
| **ORDINARY ITEMS:** | | |
| Mortgage Payment(s) | - | 10,600 |
| Rental Payment(s) | - | 4,030 |
| Other Loan Payments | - | 2,500 |
| Utilities | - | 18,246 |
| Insurance | - | 24,212 |
| Auto | - | 2,736 |
| Investment Contributions | - | 28,750 |
| Business Expenses | - | 9,058 |
| Repairs and Maintenance | - | 23,297 |
| Medical Expenses | - | 6,606 |
| Household Expenses | - | 86,813 |
| Account Transfer | - | 5,000 |
| Bank Fees | - | 1,122 |
| Child Care Expenses | - | 1,200 |
| Alimony and Child Support Payments | - | - |
| Legal Fees | - | 9,142 |
| Taxes - Real Estate | - | - |
| Taxes - Personal Property | - | - |
| Storage Unit | - | 639 |
| Travel and Entertainment | - | 1,659 |
| Housekeeping | - | 31,070 |
| Miscellaneous Expense | - | 52,991 |
| Other (attach schedule) | - | 200 |
| Miscellaneous Disbursements[1] | - | 7,724 |
| Trustee Disbursements[2] | 4,000 | 39,325 |
| **Total Ordinary Disbursements** | 4,000 | 366,319 |
| **REORGANIZATION ITEMS:** | | |
| Professional Fees | - | 6,717 |
| U. S. Trustee Fees | - | 3,575 |
| Other Reorganization Expenses (attach schedule) | - | - |
| **Total Reorganization Items** | - | 10,292 |
| **Total Disbursements (Ordinary + Reorganization)** | 4,000 | 376,611 |
| **Net Cash Flow (Total Receipts - Total Disbursements)** | - | 9,478 |
| Cash - End of Month (June 30, 2020) (Must equal reconciled bank statement) | 18,782 | 18,782 |

### THE FOLLOWING SECTION MUST BE COMPLETED

| DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES: (FROM CURRENT MONTH ACTUAL COLUMN) | |
|---|---|
| TOTAL DISBURSEMENTS | 4,000 |
| LESS: TRANSFERS TO DEBTOR IN POSSESSION ACCOUNTS | - |
| PLUS: ESTATE DISBURSEMENTS MADE BY OUTSIDE SOURCES (i.e. from escrow accounts) | - |
| TOTAL DISBURSEMENTS FOR CALCULATING U.S. TRUSTEE QUARTERLY FEES | 4,000 |

[1]Miscellaneous income and disbursements are sources and expenditures that were not under the control of the Trustee's and did not run through the Trustee's account.

[2]The Trustee created a system where all funds will flow through the Trustee's bank account (account #8981), and a budgeted amount will be transferred to the Debtor's bank account (account #6942) for daily living expenses. Trustee Disbursements are funds that were received by the Trustee and transferred to the Debtor's account for these living expenses.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1, 2020 - June 30, 2020

### INDIVIDUAL DEBTOR CASH RECEIPTS AND CASH DISBURSEMENTS - continuation sheet

| BREAKDOWN OF "OTHER" CATEGOR | Current Month Actual | Cumulative Filing to Date Actual |
|---|---|---|
| **Other Income** | | |
| Endo Surgical Center | 4,000 | |
| | | |
| | | |
| | | |
| | | |
| **Other Taxes** | | |
| | | |
| | | |
| | | |
| | | |
| **Other Ordinary Disbursements** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **Other Reorganization Expenses** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

FORM MOR-1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1, 2020 - June 30, 2020

### Disbursements – Account #8981

| Payee | Account | Date | Amount | Purpose | Check # | Comment |
|---|---|---|---|---|---|---|
| **Personal Disbursements** | | | | | | |
| William Focazio | #8981 | 6/3/2020 | 1,500 | Trustee Disbursements | | |
| William Focazio | #8981 | 6/8/2020 | 1,000 | Trustee Disbursements | | |
| William Focazio | x8981 | 6/12/2020 | 1,500 | Trustee Disbursements | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| Total | | | $4,000 | | | |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re William J. Focazio

**Case No. 19-10880**
**Reporting Period June 1, 2020 - June 30, 2020**

**BANK RECONCILIATIONS**
**Continuation Sheet for MOR-1**

A bank reconciliation must be included for each bank account. The debtor's bank reconciliation may be substituted for this page.

| | Account #8981 | |
|---|---|---|
| **BALANCE PER BOOKS** | | 18,782 |
| **BANK BALANCE** | | 18,782 |
| (+) DEPOSITS IN TRANSIT (ATTACH LIST) | | - |
| (-) OUTSTANDING CHECKS (ATTACH LIST) | | - |
| OTHER  (ATTACH EXPLANATION) | | - |
| ADJUSTED BANK BALANCE * | | 18,782 |
| * Adjusted bank balance must equal | | |
| balance per books | | |
| **DEPOSITS IN TRANSIT** | Date | Amount |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **CHECKS OUTSTANDING** | Ck. # | Amount |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| **OTHER** | | |
| | | |
| | | |
| | | |
| | | |
| | | |

```
                                        Date  6/05/20              Page      1
                                        Account Number    @XXXXXXXXX@8981
                                        Enclosures                          3




        WILLIAM FOCAZIO
        NJ 19-10880-VFP CHAPTER 11
        EDWARD A PHILLIPS CHAPTER 11 TRUSTEE
        1515 MARKET STREET SUITE 1200
        PHILADELPHIA PA 19102




_____       CHECKING ACCOUNT _____

ABSOLUTELY FREE CHECKING            Number of Enclosures              3
Account Number       @XXXXXXXXX@8981 Statement Dates   5/06/20 thru  6/07/20
Previous Balance        21,606.80   Days in the statement period          33
   3 Deposits/Credits    4,500.00   Average Ledger               19,607.55
   6 Checks/Debits       5,825.00   Average Collected            19,607.55
Service Charge                .00
Interest Paid                 .00
Current Balance         20,281.80


_____

Activity in Date Order
Date      Description                     Credits      Debits
5/08 Bill Paid-WILLIAM FOCAZIO Conf                  2,300.00-      19,306.80
     #17
5/13 BillPay Check                                     200.00-      19,106.80
5/14 SENDER      ENDO SURGICAL CE      1,500.00                     20,606.80
     PPD  467596182
5/14 BillPay Check                                     325.00-      20,281.80
5/20 Bill Paid-WILLIAM FOCAZIO Conf                    850.00-      19,431.80
     #19
5/21 BillPay Check                                     650.00-      18,781.80
6/01 SENDER      ENDO SURGICAL CE      1,500.00                     20,281.80
     PPD  469834368
6/03 Bill Paid-WILLIAM FOCAZIO Conf                  1,500.00-      18,781.80
     #20
6/04 SENDER      ENDO SURGICAL CE      1,500.00                     20,281.80
     PPD  470694164


_____
                   --- CHECKS IN NUMBER ORDER ---
Date   Check No     Amount  Date  Check No     Amount  Date  Check No     Amount
5/14   20004        325.00  5/13  20005        200.00  5/21  20006        650.00
* Denotes missing check numbers
```

```
                                        Date  6/05/20        Page     2
                                        Account Number   @XXXXXXXXXX@8981
                                        Enclosures                      3



        WILLIAM FOCAZIO
        NJ 19-10880-VFP CHAPTER 11
        EDWARD A PHILLIPS CHAPTER 11 TRUSTEE
        1515 MARKET STREET SUITE 1200
        PHILADELPHIA PA 19102

ABSOLUTELY FREE CHECKING          @XXXXXXXXXX@8981   (Continued)
```

Daily Balance Information

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 5/06 | 21,606.80 | 5/14 | 20,281.80 | 6/01 | 20,281.80 |
| 5/08 | 19,306.80 | 5/20 | 19,431.80 | 6/03 | 18,781.80 |
| 5/13 | 19,106.80 | 5/21 | 18,781.80 | 6/04 | 20,281.80 |

```
                                    Date  7/06/20         Page     1
                                    Account Number   @XXXXXXXXX@8981
                                    Enclosures
```

```
       WILLIAM FOCAZIO
       NJ 19-10880-VFP CHAPTER 11
       EDWARD A PHILLIPS CHAPTER 11 TRUSTEE
       1515 MARKET STREET SUITE 1200
       PHILADELPHIA PA 19102
```

```
                        CHECKING ACCOUNT
───────────────────────────────          ─────────────────────────────

ABSOLUTELY FREE CHECKING            Number of Enclosures              0
Account Number     @XXXXXXXXX@8981   Statement Dates  6/08/20 thru  7/06/20
Previous Balance          20,281.80  Days in the statement period     29
    1 Deposits/Credits     1,000.00  Average Ledger            18,919.73
    2 Checks/Debits        2,500.00  Average Collected         18,919.73
Service Charge                  .00
Interest Paid                   .00
Current Balance           18,781.80
```

```
───────────────────────────────────────────────────────────────────

Activity in Date Order
Date      Description              Credits        Debits
6/08 SENDER    ENDO SURGICAL CE    1,000.00                  21,281.80
     PPD   471057974
6/08 Bill Paid-WILLIAM FOCAZIO Conf           1,500.00-     19,781.80
     #21
6/12 Bill Paid-WILLIAM FOCAZIO Conf           1,000.00-     18,781.80
     #22
```

```
───────────────────────────────────────────────────────────────────

Daily Balance Information
Date      Balance       Date        Balance
6/08        19,781.80   6/12          18,781.80
```

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1, 2020 - June 30, 2020

## SCHEDULE OF PROFESSIONAL FEES AND EXPENSES PAID

This schedule is to include all retained professional payments from case inception to current month.

| Payee | Period Covered | Amount Approved | Payor | Check Number | Date | Amount Paid Fees | Expenses | Year-To-Date Fees | Expenses |
|-------|----------------|-----------------|-------|--------------|------|------------------|----------|-------------------|----------|
| David Stevens | | 5,000 | William J. Focazio | 1328 | 1/17/2019 | 5,000 | - | 5,000 | - |
| David Stevens | | 1,717 | William J. Focazio | 1329 | 2/8/2019 | 1,717 | - | 1,717 | - |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1, 2020 - June 30, 2020

## BALANCE SHEET

The Balance Sheet is to be completed on an accrual basis only. Pre-petition liabilities must be classified separately from postpetition obligations.

| | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| **ASSETS** | | |
| Other Property (attach schedule) | 1,455,000 | 1,455,000 |
| Other Investments (attach schedule) | Value Unknown | Value Unknown |
| | | |
| Cash | 18,782 | 4,000 |
| Autos, Trucks & Other Vehicles | 43,862 | 43,862 |
| Household Goods and Furniture | 100,000 | 100,000 |
| Electronics | 5,000 | 5,000 |
| Clothing | 3,000 | 3,000 |
| Jewelry | 6,000 | 6,000 |
| Partnerships & Business Ventures | 60,000 | 60,000 |
| Medical License | 100,000 | 100,000 |
| Total Other Assets | 336,644 | 321,862 |
| | | |
| **TOTAL ASSETS** | 1,791,644 | 1,776,862 |

| | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| ***LIABILITIES NOT SUBJECT TO COMPROMISE (Postpetition)*** | | |
| Accounts Payable | - | - |
| Taxes Payable (refer to FORM MOR-4) | - | - |
| Wages Payable | - | - |
| Notes Payable | - | - |
| Rent / Leases - Building/Equipment | - | - |
| Secured Debt / Adequate Protection Payments | - | - |
| Professional Fees - Counsel | 147,210 | - |
| Professional Fees - Financial Advisors | 109,574 | - |
| Amounts Due to Insiders* | - | - |
| Other Postpetition Liabilities (attach schedule) | - | - |
| Total Postpetition Liabilities | 256,784 | - |
| | | |
| ***LIABILITIES SUBJECT TO COMPROMISE (Pre-Petition)*** | | |
| Secured Debt | 1,455,000 | 850,000 |
| Priority Debt | 421,014 | 246,979 |
| Unsecured Debt | 14,886,783 | 15,228,600 |
| Total Pre - Petition Liabilities | 16,762,796 | 16,325,579 |
| | | |
| **Total Liabilities** | 17,019,580 | 16,325,579 |

*"Insider" is defined in 11 U.S.C. Section 101(31).

Note: The asset and liability values were originally based on the values listed in the bankruptcy petition filed and are updated based on any additional information obtained, i.e. proof of claims, appraisals etc.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1, 2020 - June 30, 2020

BALANCE SHEET - continuation sheet

| ASSETS | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| **Other Property** | | |
| 66 Westview Road   Wayne, NJ  07470 | 650,000 | 650,000 |
| 41 Inlet Drive Point Pleasant Beach, NJ | 260,000 | 260,000 |
| 41A Inlet Drive Point Pleasant Beach, NJ | 275,000 | 275,000 |
| 43 Inlet Drive Point Pleasant Beach, NJ, 08742 | 270,000 | 270,000 |
| | | |
| Total Other Property | 1,455,000 | 1,455,000 |
| | | |
| **Other Investments** | | |
| Shares of DVCO | Value Unknown | Value Unknown |
| | | |
| Other Assets | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| LIABILITIES AND OWNER EQUITY | BOOK VALUE AT END OF CURRENT REPORTING MONTH | BOOK VALUE ON PETITION DATE |
|---|---|---|
| Other Postpetition Liabilities | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Adjustments to Owner Equity | | |
| | | |
| | | |
| | | |
| | | |
| Postpetition Contributions (Distributions) (Draws) | | |

Restricted Cash is cash that is restricted for a specific use and not available to fund operations.  Typically, restricted cash is segregated into a separate account, such as an escrow account.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re William J. Focazio

Case No. 19-10880
Reporting Period June 1, 2020 - June 30, 2020

## ACCOUNTS RECEIVABLE RECONCILIATION AND AGING

| Accounts Receivable Reconciliation | Amount |
|---|---|
| Total Accounts Receivable at the beginning of the reporting period | |
| + Amounts billed during the period | |
| - Amounts collected during the period | N/A |
| Total Accounts Receivable at the end of the reporting period | |
| | |

| Accounts Receivable Aging | Amount |
|---|---|
| 0 - 30 days old | |
| 31 - 60 days old | |
| 61 - 90 days old | N/A |
| 91+ days old | |
| Total Accounts Receivable | |
| Amount considered uncollectible (Bad Debt) | |
| Accounts Receivable (Net) | |

## DEBTOR QUESTIONNAIRE

| Must be completed each month | Yes | No |
|---|---|---|
| 1. Have any assets been sold or transferred outside the normal course of business this reporting period?  If yes, provide an explanation below. | | X |
| 2. Have any funds been disbursed from any account other than a debtor in possession account this reporting period?  If yes, provide an explanation below. | | X |
| 3. Have all postpetition tax returns been timely filed?  If no, provide an explanation below. | | N/A |
| 4. Are workers compensation, general liability and other necessary insurance coverages in effect?  If no, provide an explanation below. | | N/A |
| 5. Has any bank account been opened during the reporting period?  If yes, provide documentation identifying the opened account(s).  If an investment account has been opened provide the required documentation pursuant to the Delaware Local Rule 4001-3. | | X |

EXHIBIT B – EXECUTORY CONTRACTS

## EXHIBIT C – PROJECTED FINANCIAL INFORMATION

**Estimated projected monthly income for first 60 months of plan**

| INCOME | | |
|---|---|---|
| Gross Income[37] | | 30,833.33 |
| | | |
| Payroll Deductions | Federal Taxes (estimate. 35%) | <10,791.67> |
| | State Taxes (estimate 6.37%) | <1,964.08> |
| | SS/FICA/NJUI | |
| | | |
| **Net Income** | | **18,077.58** |
| | | |
| **EXPENSES** | | |
| Rent | 5,000.00 | |
| Electric and Heat | 1,000.00 | |
| Food | 1,000.00 | |
| Clothing | 500.00 | |
| Personal Care | 200.00 | |
| Medical and Dental | 200.00 | |
| Transportation | 600.00 | |
| Life Insurance | 150.00 | |
| Health Insurance | 500.00 | |
| Telephone/Cable/Cell | 600.00 | |
| Automobile Insurance | 500.00 | |
| Entertainment | 500.00 | |
| | | |
| Total Monthly Payments | | 10,750.00 |
| | | |
| **Monthly Net Income** | | **7,328.00** |
| | | |
| **Plan Payments** | | |
| Priority Tax Claims (IRS) | 3,083.00[38] | |
| Priority Tax Claims (NJ) | | |
| Administrative Claims (Professionals) | 2,500.00[39] | |
| Unsecured Creditors | $1,563.00[40] | |
| | | |
| **Total Plan Payments** | | **7,146.00** |
| | | |
| **Balance of Disposable Income** | | **182.00[41]** |

---

[37] Gross income is projected at $370,000.00 per year.
Gross monthly is #30,833.33
[38] Debtor believes the total tax debt is $210,000, which this Plan proses to pay. The taxing authorities will be paid $25,000 at confirmation, leaving $185,000 to be paid over 60 months of the plan (i.e., $3,083.33 per month).
[39] The total professional fees are projected at $200,000, of which $50,000.00 will be paid at confirmation. The balance of the $150,000 will be paid over 60 months at $2,500.00 per month.
[40] The general unsecured claims are projected at $150,000.00, which will be pro rata over 96 months at ($1,562.50 per month) (Amount in chart is rounded).
[41] The $182.00 net estimated disposable income is based on the first 60 months. From month 61 through month 96, the net disposable income is estimated to be approximately $5,765.00 per month.

## EXHIBIT D - **Cash on hand on the Effective Date**

Cash on hand on the Effective Date:                    $95,782.00[42]

Less –

     Amount of Administrative Expenses payable
     on effective date of Plan                          $50,000.00

     Amount of statutory costs and charges              $4,000.00[43]

     Amount of cure payments for executory contracts   $0.00

     Other Plan Payments due on Effective Date          $25,000.00[44]

          Balance after paying these amounts……..   $16,782.00

The sources of the cash the Debtor will have on hand by the Effective Date are estimated as follows:

| | |
|---|---|
| $18,782.00 | Cash in the Debtor's bank account now[45] |
| +$2,000.00 | Additional cash Debtor will accumulate from net earnings between now and Effective Date [Projection assumes one month only] |
| +N/A | Borrowing [state separately terms of repayment] |
| +N/A | Capital Contributions |
| +$75,000.00 | Other:  By management company |
| $95,782.00 | Total [This number should match "cash on hand" figure noted above] |

---

[42] Value is based on the reported $18,782.00 per the *Monthly Operating Report* for Reporting Period June 1, 2020 to June 30, 2020 filed August 18, 2020 (Doc. No. 181) plus the expected capital contribution of $75,000 and one month of net earnings at $2,000.

[43] Value is estimate only.

[44] The $25,000 is the proposed initial payment to the taxing authorities on the date of confirmation.

[45] Value is based on the reported $18,782.00 per the *Monthly Operating Report* for Reporting Period June 1, 2020 to June 30, 2020 filed August 18, 2020 (Doc. No. 181).

## EXHIBIT E - **Liquidation Analysis**

### [Pursuant to Section 1190(1)(B) of the Bankruptcy Code]
### *Debtor's Estimated Liquidation Value of Assets*

**ASSETS**

| | |
|---|---|
| Cash | 18,782.00[46] |
| Autos, Trucks & Other Vehicles | 43,862.00[47] |
| Household Goods and Furniture | 100,000.00 |
| Electronics | 5,000.00 |
| Clothing | 3,000.00 |
| Jewelry | 6,000.00[48] |
| Partnerships & Business Ventures | 60,000.00 |
| Medical License | 100,000.00 |
| Real Estate: | |
| 66 Westview Road, Wayne, NJ | 650,000.00 |
| 41 Inlet Drive, Point Pleasant Beach, NJ | 260,000.00 |
| 41A Inlet Drive Point Pleasant Beach, NJ | 275,000.00 |
| 43 Inlet Drive Point Pleasant Beach, NJ | 270,000.00 |
| Other Investments: | |
| Shares of DVCO (and other LLCs) | Unknown |
| **Total Assets at Liquidation Value** | | **1,791,644.00** |

| | | |
|---|---|---|
| **Less:** | | |
| Secured creditors' recoveries | 7,000,000.00 | |
| **Less:** | | |
| Chapter 7 trustee fees and expense | 76,999.32[49] | |
| **Less:** | | |
| Chapter 11 Administrative Expenses | 200,000.00 | |
| **Less:** | | |
| Priority claims, excluding Administrative Expense claims | 210,000.00 | |
| **Less:** | | |
| Debtor's claimed exemptions | 0.00 | |
| **Total Deductions** | | **<7,486,999.30>** |
| (1) Balance for unsecured claims | | 0.00 |
| (2) Total dollar amount of unsecured claims | | 0.00 |
| *Percentage of Claims Which Unsecured Creditors Would Receive or Retain in a Chapter 7 Liquidation:* | | 0.00 |
| *Percentage of Claims Which Unsecured Creditors Will Receive or Retain Under the Plan* | | Approx: 5% |

---

[46] Unless otherwise noted, all values are derived from the *Monthly Operating Report* for the reporting period June 1, 2020 to June 30, 2020 filed on August 18, 2020 (Doc No. 181) (the "**MOR**"). Debtor reserves all rights.

[47] Although MOR valued such assets at $43,862.00, the Debtor believes that the automobiles are valued closer to 73,362.00 (see page 8 of this Plan). For purposes of consistency, the Debtor will use the asset values as provided in the MOR.

[48] On July 14, 2020, the Chapter 11 Trustee filed a *Notice of Inventory of Items Removed By Trustee From Debtor's Residence* (Doc. No. 178). As of the time of the filing of this proposed Plan, an appraisal of the inventory has not been provided to the Debtor.

[49] This value includes only the calculation of a chapter 7 trustee's commission under 11 U.S.C. §326 against the total value of assets as indicated above. The value does not include attorneys' fees or other costs.