| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY <br><br> **Caption in Compliance with D.N.J. LBR 9004-1(b)** <br><br> Donald F. Campbell, Jr., Esq. (DC8924) <br> Giordano, Halleran & Ciesla, P.C. <br> 125 Half Mile Road, Suite 300 <br> Red Bank, New Jersey 07701 <br> Tel:  (732) 741 3900 <br> Fax: (732) 224 6599 <br> dcampbell@ghclaw.com <br> Attorneys for Allstate New Jersey Property and Casualty Insurance Company | |
| In Re: <br><br> William J Focazio <br><br> Debtor. | Case No**.:** 19-10880 <br><br> Chapter:  11 <br><br> Judge: Vincent F. Papalia, U.S.B.J. |

## OBJECTION OF ALLSTATE NEW JERSEY PROPERTY AND CASUALTY INSURANCE COMPANY TO THE DEBTOR'S AMENDED PETITION ELECTING TO PROCEED AS A SUBCHAPTER V CASE

Allstate New Jersey Property and Casualty Insurance Company ("Allstate") files this objection to the Debtor's amended petition to proceed as a Subchapter V case and through its attorneys Giordano, Halleran & Ciesla, P.C. respectfully states:

### RELEVANT BACKGROUND

1. On January 15, 2019, Dr. William Focazio (the "Debtor") filed a voluntary petition under Chapter 11 (the "Petition Date") and was assigned case number 19-10880 (VFP).

2. On March 11, 2019, the Debtor filed schedules to accompany his bankruptcy petition (ECF. No. 45).

3. On March 22, 2019, the Debtor filed amended schedules (ECF No. 51). On Schedule A/B, the Debtor lists his ownership interest in William Focazio, M.D., P.A. as 100%, and Endo Surgical Center of

North Jersey, P.C. as 90%. *Id.* at p. 21-22, question 19. Both of these entities also have Chapter 11 cases pending before this Court. *See* Case Nos. 18-10752 (VFP) and 18-10753 (VFP) respectively.

4. On May 31, 2019, the Court entered an Order Directing the Appointment of a Chapter 11 Trustee in this case (ECF. No. 69). On May 17, 2019, the Court entered an Order Approving the Appointment of Edward A. Phillips as the Chapter 11 Trustee (ECF No. 78).

5. On February 10, 2020, the United States Trustee filed a Motion to Convert this Case to One Under Chapter 7 (ECF No. 140). On March 10, 2020, counsel for the Debtor filed a Cross Motion to Dismiss the Case (ECF. No. 146). Both motions have been adjourned several times and are currently returnable on October 29, 2020.

6. On September 23, 2020, the Debtor filed an amended petition in order to proceed as a small business debtor under Subchapter V of Chapter 11 (ECF No. 189). The amendment states that the Debtor "…is a debtor as defined in 11 U.S.C. § 1182(1)." Section 1182(1) states that a small business debtor under Subchapter V must have aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) of less than $7,500,000. 11 U.S.C. § 1182(1).

7. The Debtor's amended petition lists William Focazio, M.D., P.A. and Endo Surgical Center of North Jersey, P.C. as affiliates (ECF No. 189, p. 2, question 10).

8. On September 23, 2020, the Debtor filed his Small Business Debtor Plan of Reorganization (the "Plan," ECF No. 188).

9. The confirmation hearing on the Plan is currently scheduled for October 29, 2020, with objections due on October 22, 2020.

## OBJECTION TO DEBTOR'S AMENDED PETITION ELECTING TO PROCEED AS A SUBCHAPTER V CASE

**A. The Debtor's Case Cannot Proceed in Subchapter V as the Deadlines for a Subchapter V Status Conference and Plan of Reorganization Have Expired**

10. Allstate objects to the amendment of the Debtor's petition to proceed under Subchapter V of Chapter 11. Subchapter V requires a debtor to file a plan not later than 90 days after the order for relief and also requires the Court to hold a status conference not later than 60 days after the order for relief. 11 U.S.C. §§ 1189(b), 1188(a). Section 1188(c) further requires a debtor to file a status report 14 days before the status conference referenced in § 1188(a) in order to report to the Subchapter V trustee and all interested parties the efforts the debtor has undertaken and will undertake to attain a consensual plan of reorganization. 11 U.S.C. § 1188(c).

11. As an initial matter, it is important to note that because the Debtor elected to proceed under Subchapter V by amending his Chapter 11 petition, this case was not converted from one chapter to another under the Bankruptcy Code. Accordingly, the Debtor's Subchapter V election does not change the date of the order for relief under § 348. *See generally* 11 U.S.C. § 348.

12. The Small Business Reorganization Act ("SBRA") known as Subchapter V was passed by Congress and signed into law on August 23, 2019 and became effective on February 19, 2020. Pub. L. No. 116-54, 133 Stat. 1079 (2019). The SBRA offers small business debtors an expedited process and tailored tools, not available in a typical Chapter 11 case, for confirming a plan of reorganization. In order to facilitate this process, the SBRA established certain filing deadlines that must be met by the Debtor to keep the case from being dismissed. *See In re Progressive Sols., Inc.*, 615 B.R. 894, 896-97 (Bankr. C.D. Cal. 2020); *In re Trepetin*, 617 B.R. 841 (Bankr. D. Md. 2020).

13. In the Debtor's case, the order for relief was entered on January 15, 2019. Therefore, upon amending his petition to proceed under Subchapter V on September 23, 2020 (approximately one year and eight months after the Petition Date), the Debtor immediately put himself in default of the 90-day plan filing requirement of § 1189(b) and the 60-day status conference requirement of § 1188(a).

14. Notwithstanding these defaults, the above deadlines can be extended. In order for the Court to grant such an extension, the Court must find that the "need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." §§ 1188(b), 1189(b).

15. While it is clear that the SBRA was not enacted until after the Debtor filed his petition, this fact does not justify an extension of the requirements that a debtor file a Subchapter V plan within 90 days of the petition date or the Court hold a status conference within 60 days of the petition date as stated in §§ 1189(b) and 1188(a). This is especially true given that the Debtor waited an additional 7 months after the effective date of the SBRA to amend his petition.

16. The phrase "if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable" is new to Chapter 11, however that language is used elsewhere in the Bankruptcy Code. Specifically, § 1221, which is found in Chapter 12 (applicable to cases for family farmers or family fisherman with regular annual income), uses the same language. Like § 1189(b), § 1221 requires a debtor to file a plan within 90 days after the order for relief, but provides that the court may extend this deadline if the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable.

17. Courts interpreting this language as used in § 1221 have held that it effectively requires the bankruptcy court, before granting an extension request, to find that the delay necessitating the extension was caused by circumstances beyond the debtor's control. *In re Seven Stars on the Hudson Corp.*, 2020 Bankr. LEXIS 2106, *14-15 (Bankr. S.D. Fla. August 7, 2020) (collecting cases).

18. Further, Congress purposefully set a short deadline for a debtor to file a plan under Subchapter V, and set a very high standard for an extension of that deadline. To excuse a debtor's compliance with these deadlines because they did not previously exist is to effectively pick and choose which provisions of Subchapter V should apply to a debtor's case. That could not be what Congress intended since if a debtor

elects to proceed under Subchapter V, it must comply with *all* its provisions, including the applicable statutory timelines. *Id*. at *18.

19.     Accordingly, where a debtor elects into Subchapter V after expiration of the statutory deadlines that debtor should justly be held accountable for those circumstances, because the debtor himself created them. *Id*. This is because it was the debtor that made the decision to elect into Subchapter V despite knowing that the plan filing and status conference deadlines had already expired. No circumstances beyond the debtor's control caused the debtor to make that decision. *Id*. at *18-19.

20.     Therefore, in this case, because the Debtor elected to proceed under Subchapter V after the statutory deadlines to file a plan and hold a status conference had passed, it cannot be said that his need for an extension of these deadlines is attributable to circumstances for which he should not justly be held accountable. To the contrary, the Debtor should justly be held accountable for these circumstances because he knowingly made this election after the deadlines expired.

21.     Further, the Debtor's decision to proceed under Subchapter V should not impose upon Allstate and other creditors all of the added powers of a Subchapter V debtor without also accounting for one of the most significant protections afforded to creditors under the SBRA — that the case proceed expeditiously. *Id*. at *21-22; *see also In re Double H Transp. LLC*, No. 19-31830-HCM, 2020 WL 2549850 (Bankr. W.D. Tex. March 5, 2020) (denying debtor's amended petition to proceed under Subchapter V three months after case filed under regular Chapter 11 because it would create a "procedural quagmire" as the deadlines under the Act had already passed).

**B. The Debtor's Case Cannot Proceed Under Subchapter V as it Does Not Comply with the Established Debt Limits**

22.     Allstate further objects to the amendment of the Debtor's petition to procced to under Subchapter V due to the total amount of his debts exceeding the debt limit set by the SBRA.

23. The SBRA established a debt limit for Subchapter V cases of $2,725,625. However, the CARES Act raised the debt limit for a Subchapter V debtor to $7.5 million for a one year period due to the COVID-19 pandemic. This increase applies to cases *commenced on or after the date of its enactment*, and does not alter the definition of a small business debtor contained in § 101(51D). Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–136, 134 Stat. 281 (2020) at § 1131(a)(3).

24. In other words, for cases commenced under Subchapter V on or after March 27, 2020 (the date of enactment), the Act expands the eligibility of "small business debtors" to include a person engaged in commercial or business activities that has aggregate, non-contingent, liquidated, secured, and unsecured debts of not more than $7,500,000 (up from $2,725,625) by revising the definition of "small business debtor" in sections 1182 and 101(51D) of the Code. Notwithstanding this increase, the debt limit remains $2,725,625 for cases commenced *before* March 27, 2020.

25. In this case, the Debtor filed his petition for Chapter 11 on January 15, 2019. Therefore, he is ineligible for the increased debt limit under the CARES Act.

26. Per the Debtor's Amended Summary of Assets and Liabilities filed on September 30, 2020, he has non-contingent liquidated secured and unsecured debts totaling $16,325,579 (ECF No. 198).

27. Put simply, the Debtor is ineligible for the Subchapter V election because he greatly exceeds the $2,725,625 debt limit stated in § 101(51D). Further, even if the increased debt limit of $7,500,000 applied to his case the same would be true.

## **CONCLUSION**

Based on the foregoing, Allstate respectfully requests that this Court not permit the Debtor to proceed under Subchapter V and grant such other relief as this Court deems appropriate, fair and just.

Respectfully Submitted,

GIORDANO HALLERAN & CIESLA

*Attorneys for Allstate*

By: /s/ Donald F. Campbell, Jr.
DONALD F. CAMPBELL, JR.

Dated: October 7, 2020

Docs #4658110-v1