UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE
REGIONS 3 & 9
Mitchell Hausman, Esq. (MH 1464)
One Newark Center, Suite 2100
Newark, NJ   07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-Mail: Mitchell.B.Hausman@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| William J. Focazio, | : | Case No. 19-10880(VFP) |
| | : | |
| Debtor. | : | Hearing Date: Nov 24, 2020 at 2:00 P.M. |
| | : | |

**OBJECTION OF THE UNITED STATES TRUSTEE TO
CONFIRMATION OF THE DEBTORS' SECOND AMENDED PLAN**

The United States Trustee ("UST"), by and through his counsel, and in furtherance of his duties pursuant to 28 U.S.C. §586(a)(3) and (5), respectfully submits this objection (the "Objection") to confirmation of the Second Amended Plan (ECF No. 228) (the "Plan") filed by William F Focazio, the above-captioned debtor (the "Debtor") and respectfully represents as follows:

**BACKGROUND**

1. On January 15, 2019, the *individual* Debtor filed a voluntary petition for relief under Chapter 11 of title 11, United States Code (the "Bankruptcy Code").

2. An Unsecured Creditors' Committee has not been appointed in this case.

3. On May 31, 2019, this Court entered an Order Directing the Appointment of a

Chapter 11 Trustee in the case. ECF. No. 69. On May 17, 2019, this Court entered an Order Approving the Appointment of Edward A. Phillips, CPA as the Chapter 11 Trustee. ECF No. 78.

4. On November 13, 2020, the Debtor filed the Plan. On that same date, together with the Plan, the Debtor filed the Second Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code Describing the Plan (Docket Entry 227) (the "Disclosure Statement"). As of the filing of this Objection, the Plan is scheduled for a confirmation hearing on November 24, 2020 at 2:00 p.m.

5. Also on November 13, 2020, the Debtor filed a Plan Supplement. ECF No. 226. Among other things the Plan Supplement states that the Debtor is working on a management agreement with RJ Capital and that the "Debtor intends to clarify its relationship, both monetarily and non-monetarily, with RJ Capital by filing a Certification of Dr. Focazio in support of confirmation which attaches the Management Agreement between the parties." *Id* at pg 5.

6. Pursuant to 11 U.S.C. §586, the UST is obligated to oversee the administration of Chapter 11 cases. Under 11 U.S.C. §307, the UST has standing to be heard on any issue in any case or proceeding under the Bankruptcy Code. Such oversight is part of the UST's overarching responsibility to enforce the laws as written by Congress and interpreted by the courts. See *United States Trustee v. Columbia Gas Systems, Inc. (In re Columbia Gas Systems, Inc.)*, 33 F.2d 294, 295-96 (3d Cir. 1994) (noting that the UST has "public interest standing" under 11 U.S.C. §307 which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the United States Trustee as a "watchdog").

## OBJECTION

*The Discharge Provision:*

7. Section IV. A. of the Plan (page 25 of the Plan) provides for a discharge upon confirmation. ECF No. 228. Although this provision is limited "to the extent specified in 11.U.S.C. § 1141," its application to this individual case is confusing when considered in the shadow of subsection 1141(d)(5)(A) of the Bankruptcy Code. Pursuant to Section 1141(d)(5)(A) of the Bankruptcy Code, in a case in which the debtor is an individual, "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan." The Plan or the confirmation order should be clarified that Dr. Focazio does not receive a discharge until all Plan payments are made. The following is suggested language;

> Confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments under this Plan, or as otherwise provided in § 1141(d)(5) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

*The Release of Claims Provision:*

8. Section IV. B. of the Plan, Release of Claims, (pages 25-26 of the Plan) provides certain terms regarding a "release" of claims for the benefit of the "the Debtor and his respective agents, employees, principals, members, officers, shareholders, representatives, financial advisors, accountants, attorneys, or employees and his representative assets and properties…". ECF No. at 228. In addition, this section provides expansive injunctive forms of relief, as well

as a release and injunction pursuant to Bankruptcy Rule 9019.   *Id* at 25-26.

    9.    The wording of the Release of Claims appears to be geared to a corporate case as this individual Debtor does not have employees, principals, members, officers, or shareholders.   In addition, as noted above, pursuant to subsection 1141(d)(5)(A) of the Bankruptcy Code, "unless after notice and a hearing the court orders otherwise for cause, confirmation of the plan does not discharge any debt provided for in the plan until the court grants a discharge on completion of all payments under the plan."   The proposed release and injunction provisions in the Plan circumvent Section 1141(d)(5)(A) of the Bankruptcy Code, in that the individual Debtor here would be given advance "protections" that are akin to a discharge (if not equal to or greater than a bankruptcy discharge) at the time of the Plan's proposed Effective Date, regardless of whether any payments to creditors under the Plan have been made.

    10.    In addition the Release of Claims section includes that;

> Pursuant to Bankruptcy Rule 9019, confirmation of the Plan shall constitute, and all consideration distributed under this Plan shall be in exchange for and in complete satisfaction, settlement and release of and an injunction against, all as of the Effective Date, any and all Claims, demands, allegations or causes of action, against the Debtor and his respective agents, representatives, officers, shareholders, members, employees, financial advisors, accountants, attorneys, or employees for any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan or in connection with the Chapter 11 case or the operations of the Debtor during the pendency of the Chapter 11 case.   ECF No. 228, pg 26.

    11.    While a plan may incorporate a settlement, a plan and a settlement are not one and the same.   What may be permissible under a negotiated settlement agreement that is considered "fair, reasonable, and in the best interest of the estate" is different than what may be permissible under a plan, which is subject to the requirements of sections 1123 and 1129 of the Bankruptcy Code.   *See, e.g., Tribune*, 464 B.R. 126,176 (Bankr. D. Del. 2011)(concluding at confirmation stage that a negotiated settlement could be approved because it was fair, reasonable and in the

best interest of the Debtors' estates and making an express finding that the settlement was properly part of the plan pursuant to section 1123(b)(3)(A)). It does not appear that in this case that the release and injunction sought pursuant to Bankruptcy Rule 9019 are part of any negotiated settlement that is fair, reasonable and in the best interests of the estate. Therefore, the Debtor should not be granted any type of release or injunction pursuant to Bankruptcy Rule 9019.

12. As the Code does not provide for the release or injunctive protections sought in the Plan, such provisions cannot be confirmed. It is respectfully asserted that such provisions must be stricken from the Plan before the Plan can be considered for confirmation.

*Feasibility:*

13. Pursuant to Section 1129(a)(11), every chapter 11 plan must be feasible to be confirmed:

(a) the Court shall confirm a plan only if all of the following requirements are met:

\* \* \*

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.
See 11 U.S.C. § 1129(a)(11).

14. "The purpose of § 1129(a)(11) 'is to prevent confirmation of visionary schemes that promise creditors and equity security holders more under a proposed plan than the debtor could possible attain after confirmation.'" See In re Sound Radio, Inc., 103 B.R. 521, 522 (D.N.J. 1989), aff'd without opinion, 908 F.2d 964 (3d Cir. 1990 (citation omitted).

15. The standard of proof required by a debtor to prove a chapter 11 plan's feasibility is

by a preponderance of the evidence. *See In re Trans Max Technologies,* Inc., 349 B.R. 80, 92 (Bankr. D.Nev. 2006). *See also In re Deep River Warehouse, Inc.*, 2005 WL 2319201 *2 (Bankr. M.D.N.C. Sept. 22, 2005). The debtor must present evidence to sufficiently demonstrate that a plan has a reasonable chance of succeeding. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226. *See also Acequia, Inc.*, 787 F.2d 1352, 1364 (9th Cir. 1986).

16. In addition, the Court is obligated to independently evaluate the plan and determine whether it offers a reasonable probability of success. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226. *See also In re Monnier Bros.*, 755 F.2d 1336, 1341 (8th Cir. 1985); *In re Sovereign Oil Co.*, 128 B.R. 585, 586 (Bankr. M.D.Fla. 1991).

17. In determining whether a chapter 11 plan is feasible, only a reasonable assurance of commercial viability is required. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226. *See also In re Prudential Electric Co.*, 58 B.R. 857, 863 (Bankr. S.D.N.Y. 1986).

18. In considering whether a particular plan is feasible, courts have considered the following factors: (i) the adequacy of the debtor's capital structure; (ii) the earning power of its business; (iii) economic conditions; (iv) the ability of the debtor's management; (v) the probability of the continuation of the same management; and (vi) any related matters which determine the prospects of a sufficiently successful operation to enable performance of the provision of the plan. *See Greate Bay Hotel & Casino, Inc.*, 251 B.R. at 226-227 (*citing In re Temple Zion*, 125 B.R. 910, 915 (Bankr. E.D.Pa. 1991); *In re Landmark at Plaza Park, Ltd.*, 7 B.R. 653, 659 (Bankr. D.N.J. 1980).

19. The facts and circumstances of this case demonstrate that the Plan may not be feasible and, as a result, may fail to qualify for confirmation pursuant to 11 U.S.C. § 1129(a)(11).

20. The feasibility of the Plan is mainly contingent on RJ Capital which is going to

provide capital as needed for operations.   RJ Capital is going to provide $25,000 towards administrative tax claims and $50,000 towards administrative expenses.   In addition, it will contribute up to $1million to assist the Debtor with its operational needs to fund certain payments under the Plan.   ECF No. 228, pg 17.

21. However, despite the amount of time that RJ Capital has been involved in this case, there is no written agreement, and whatever agreement the parties previously had is changing and it appears that RJ Capital will somehow taking over the management of the Debtor.   As of the date of the filing of this Objection the UST has not seen the management agreement.   It is impossible to determine the feasibility of the Plan without being able to review the terms of the management agreement.   It is also unclear if RJ Capital is making payments to fund Dr. Focazio's individual Plan or is just committing to make up for any shortfall in payments in his related business cases.   The UST reserves all rights to supplement this objection after having the time and opportunity to review the agreement.   In addition, the Debtor should have to establish at confirmation that RJ Capital has the financial ability to fund its commitments under the Plan.

22. The Disclosure Statement states that Dr. Focazio is expected to earn $370,000 per year.   ECF No. 227, pg 41.   The Disclosure Statement states that Dr. Focazio's salary from his medical practice will be $100,000 and his salary from Endo Surgical will be $150,000.   *Id* at 46.   Dr. Focazio must disclose and establish at confirmation the source of the addition $120,000 he is expected to earn.

*Reservation of Rights re: Confirmation Order:*

23. As of the filing of this Objection, a proposed form of confirmation order has not been circulated. The UST respectfully reserves all rights with regard to any proposed form of confirmation order.

WHEREFORE, the UST respectfully requests that the Court deny confirmation of the Plan as presented.

Dated: November 20, 2020                        Respectfully submitted,

                                                                     ANDREW R. VARA
                                                                     UNITED STATES TRUSTEE
                                                                     REGIONS 3 & 9
                                                                     By:____*/s/ Mitchell Hausman*____
                                                                     Mitchell Hausman
                                                                     Trial Attorney