| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**MEYNER AND LANDIS LLP**<br>One Gateway Center, Suite 2500<br>Newark, New Jersey 07102<br>(973) 602-3478<br>Matthew P. Dolan, Esq.<br>MDolan@meyner.com<br>*Attorneys for Provident Bank and SB One Bank*<br><br>Caption in compliance with D.N.J. LBR 9004-2(c) | In Proceedings Under<br>Chapter 11 of the<br>United States Bankruptcy Code<br><br>Case No.: 19-10880 (VFP) |

IN RE:

William J. Focazio

                                 Debtor.

### SB ONE AND PROVIDENT BANK'S OBJECTION TO THE DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT AND SECOND AMENDED PLAN

Provident Bank ("**Provident**") and secured creditor SB One Bank ("**SB One**") (Provident and SB One are sometimes hereinafter collectively referred to as the "**Banks**[1]") respectfully submit the within objection to Debtor William J. Focazio's (the "**Debtor**") Second Amended Disclosure Statement (the "**Second Amended DS**") and Confirmation of the Debtor's Second Amended Plan (the "**Second Amended Plan**") on the basis that the Second Amended Plan is facially unconfirmable insofar as it fails to address SB One's rights as a secured creditor and violates the absolute priority rule set forth under 11 U.S.C. §

---

[1] Effective July 31, 2020 Provident has acquired SB One.

1

1129(b)(2)(B). In support thereof, the Banks respectfully state as follows:

## RELEVANT BACKGROUND

1. Debtor filed an initial Chapter 11 Petition on January 15, 2019. *See* CM/ECF Doc. No. 1.

2. On May 31, 2019, the Court entered an Order directing the appointment of a Chapter 11 Trustee. *See* CM/ECF Doc. No. 69.

3. On May 17, 2019, the Court entered an Order approving the Appointment of Edward A. Phillips, CPA as the Chapter 11 Trustee. *See* CM/ECF Doc. No. 78.

4. SB One is a creditor with a secured claim against the Estate in the amount of $556,211.61. *See* Claim No.: 21-1 (the "**SB One POC**").

5. Provident is a creditor with an unsecured claim against the Estate in the amount of $905,348.66. *See* Claim No.: 12-1. (the "**Provident POC**")

6. On September 23, 2020, Debtor filed an Amended Petition, Disclosure Statement and proposed Plan under Subchapter V of the Chapter 11 Bankruptcy Code. *See e.g.,* 11 U.S.C. § 1181 *et. seq.*

7. Subsequent thereto, a number of objections were filed, including an objection by the Banks (CM/ECF Doc. No. 201) and the United States Trustee (CM/ECF Doc. No. 2014).

8. On October 20, 2020, the Court denied Debtor's election to proceed under Subchapter V. CM/ECF Doc. No. 231.

9. On October 29, 2020, Debtor filed a First Amended Chapter 11 Plan (the "**First**

2

**Amended Plan**") and First Amended Disclosure Statement (the "**First Amended DS**") along with an Application to Shorten Time to Approve the First Amended Disclosure Statement on an Interim Basis (the "**Application**"). *See Cm/ECF* Doc. No. 218.

10. On October 30, 2020 the Banks objected to the Application. *See* CM/ECF Doc. No. 218.

11. On October 30, 2020 the Court granted the Debtor's Application. CM/ECF Doc. No. 219.

12. On November 5, 2020, the Banks objected to the Approval of the First Amended DS on an on an interim basis because the First Amended DS, *inter alia*, improperly classified SB One as an unsecured creditor. *See* CM/ECF Doc. No. 221.

13. On November 12, 2020, the Court entered an Order approving the First Amended DS on an Interim Basis and setting certain hearing dates for confirmation and deadlines related thereto (the "**Interim Approval Order**"). *See* CM/ECF Doc. No. 224.

14. Pursuant to the Interim Approval Order, the First Amended DS Statement was approved on an interim basis "subject to the modifications as set forth on the record on November 10, 2020 reflecting, inter alia, SB One Bank's objection to the Disclosure Statement." *See* CM/ECF Doc. No. 224.

15. On November 13, 2020, Debtor filed the Second Amended DS and Second Amended Plan. *See* CM/ECF Doc. Nos. 227-228.

3

## **OBJECTION TO APPROVAL OF THE SECOND AMENDED DS AND CONFIRMATION OF THE SECOND AMENDED PLAN**

**A.  The Second Amended DS Should not be Approved and Second Amended Plan Should not be Confirmed because the Second Amended DS Fails to Contain Adequate Information as Required by Section 1125(b) of the Bankruptcy Code**

16. The Second Amended DS and Second Amended Plan now appropriately list SB One as a secured creditor of the Estate.

17. However, the Second Amended DS and Second Amended Plan remain deficient and unconfirmable because they do not explain in detail how they intend to treat SB One's claim under the Second Amended Plan.

18. Instead, the Second Amended DS and Second Amended Plan ambiguously provide that the "Debtor intends to have this Note sold to a third party."

19. There is no indication if the Debtor actually has a buyer in place let alone whether or not the purported buyer intends to purchase SB One's Note for the full amount of SB One's secured interest.

20. As a prerequisite to soliciting the acceptance or rejection of a chapter 11 plan by creditors and equity security holders, section 1125 of the Bankruptcy Code requires a plan proponent to provide holders of claims and equity security interests with a "written disclosure statement, approved, after notice and a hearing, by the court **as containing adequate information**." 11 U.S.C. § 1125(b) (emphasis added).

21. Thus, under section 1125(b), the Court is charged, in the first instance, with

4

reviewing the Disclosure Statement and determining whether it contains adequate information. Adequate information is defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

[11 U.S.C. § 1125(a)(1)].

22.    Therefore, a disclosure statement, at a minimum, must set forth enough information to permit creditors to make an informed decision to accept or reject a proposed plan. *See In re Beltrami Enters., Inc.*, 191 B.R. 303, 304 (Bankr. M.D. Pa. 1995) (a disclosure statement must contain "all of those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan"); *see also In re Monroe Well Svc., Inc.*, 80 B.R. 324, 330 (Bankr. E.D. Pa. 1987) ("Sufficient financial information must be provided so that a creditor (likened to a 'hypothetical reasonable investor') can make an 'informed judgment' whether to accept or reject the plan") (citations omitted).

23.    As stated by the Third Circuit, "[t]he importance of full disclosure is underlaid by the reliance placed upon the disclosure statement by the creditors and the court. Given this reliance, we cannot overemphasize the [plan proponent's] obligation to provide sufficient data to satisfy the Code standard of adequate information." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988); *see also Ryan Operations G.P. v. Santiam-*

5

*Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996) (stating that "[B]ecause creditors and the bankruptcy court rely heavily on the [proponent's] disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated").

24. Based on the foregoing standard, the Second Amended DS is glaringly inadequate. The Second Amended DS fails to disclose sufficient information concerning: (a) the identity of the funding source to purchase SB One's note; and (2) the amount of the proposed purchase price.

25. Without this vital information, SB One cannot make a determination as to, among other things, whether or not SB One is left impaired under the Plan.

26. As a result, since the Second Amended DS fails to address how SB One is being treated under the Plan, the Second Amended DS is inadequate and the Second Amended Plan is should not be confirmed.

**B.    The Second Amended Plan Impermissibly Violates the Absolute Priority Rule**

27. The Second Amended Plan violates the Absolute Priority Rule set forth in Section 1129 of the Bankruptcy Code, which requires that unsecured creditors be paid in full before any value can be provided to equity interest holders. 11 U.S.C. § 1129(b)(2)(B).

28. The Second Amended Plan provides that unsecured creditors, like Provident[2],

---

[2] In the event there is a deficiency balance due subsequent to the liquidation of the real estate subject to SB One's claim, SB One may also become a partially unsecured creditor under the Second Amended Plan.

6

will be paid $150,000 *pro rata* over eight years[3] (the total unsecured claims equal approximately $2,851,200). *See* CM/ECF Doc. No. 228.

29. Despite the fact that unsecured creditors are clearly not being paid in full, the Second Amended Plan provides for Dr. Focazio to retain his equity interests in William J. Focazio, MD, PA and Endo Surgical Center of North Jersey, P.C.

30. The failure to provide for payment to unsecured creditors in full while proposing that Dr. Focazio's equity interests in Focazio MD PA and Endo Surgical will remain unaffected and unchanged means that the Plan violates the Absolute Priority Rule under Section 1129(b)(2)(B).

31. The absolute priority rule is a statutory requirement for confirming a plan of reorganization over the objection of creditors and requires that creditors be paid in full before holders of equity "receive or retain" any property under a plan "on account" of their pre-existing equity interest. See 11 U.S.C. § 1129(b)(2)(B)(ii).

32. Section 1129(b)(2)(B) of the Bankruptcy Code, which requires a chapter 11 plan to be "fair and equitable," "codifies the judge-made 'absolute priority rule,' which provided that any plan of reorganization in which stockholders [a]re preferred before the creditor, [is] invalid." *In re Iridium Operating LLC*, 478 F.3d 452, 463 (2d Cir. 2007) (internal quotations and citation omitted).

---

[3] Notably, this omits Allstate New Jersey Property and Casualty Insurance Company's claim number 22 in the amount of $3,179,020.92 which the Debtor evidently disputes but has not challenged based on the separate adversary complaint filed by Allstate. See CM/ECF Doc. No. 228.

7

33. The absolute priority rule prohibits prepetition equity holders from retaining their equity interests over the objections of creditors. 11 U.S.C. § 1129(b)(2); *see Bank of Am. Nat'l Trust & Sav. Assoc. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 442 (1999).

34. The rule "protects the rights of senior creditors against dilution either by junior creditors or by equity interests." 4 Collier On Bankruptcy ¶ 1.01[1] (15th ed. 2009).

35. Here, while Dr. Focazio can surely retain the right to remain employed by Focazio MD PA and Endo Surgical, he should not be permitted to retain his 100% equity interest in those entities to the exclusion of unsecured creditors, like Provident.

36. As a result, since the unsecured creditors are not being paid in full and Debtor is retaining equity interests in his companies, the Second Amended Plan cannot be confirmed.

## **RESERVATION OF RIGHTS**

37. The Banks hereby reserve the to object to confirmation of the Second Amended Plan on the basis of any objection asserted herein or otherwise, and to assert additional objections to the adequacy of the Second Amended DS and Second Amended Plan. Additionally, the Banks reserve their rights to comment upon and object to the form of any order presented to the Court in connection with the Second Amended DS and Second Amended Plan.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth herein, the Banks respectfully request that the Court deny the approval of the Second Amended DS and confirmation of the Second Amended Plan as currently presented.

                                                **MEYNER AND LANDIS LLP**
                                                *Attorneys for Provident Bank and SB One Bank*

                                                By:   /s/ Matthew P. Dolan
                                                          Matthew P. Dolan

DATED: November 20, 2020