| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br><br>**MEYNER AND LANDIS LLP**<br>One Gateway Center, Suite 2500<br>Newark, New Jersey 07102<br>(973) 602-3478<br>Matthew P. Dolan, Esq.<br>MDolan@meyner.com<br>*Attorneys for Provident Bank and SB One Bank*<br><br>Caption in compliance with D.N.J. LBR 9004-2(c) | In Proceedings Under<br>Chapter 11 of the<br>United States Bankruptcy Code<br><br>Case No.: 19-10880 (VFP) |
| IN RE:<br><br>William J. Focazio<br><br>                              Debtor. | |

### SB ONE AND PROVIDENT BANK'S SUPPLEMENTAL OBJECTION TO THE DEBTOR'S SECOND AMENDED DISCLOSURE STATEMENT AND SECOND AMENDED PLAN

Provident Bank ("**Provident**") and secured creditor SB One Bank ("**SB One**") (Provident and SB One are sometimes hereinafter collectively referred to as the "**Banks**[1]") respectfully submit the within supplemental objection to Debtor William J. Focazio's (the "**Debtor**") Second Amended Disclosure Statement (the "**Second Amended DS**") and Confirmation of the Debtor's Second Amended Plan (the "**Second Amended Plan**"). In support thereof, the Banks respectfully state as follows:

1

**SUPPLEMENTAL OBJECTION TO APPROVAL OF THE SECOND AMENDED DS AND CONFIRMATION OF THE SECOND AMENDED PLAN**

1. The Banks make this supplemental objection to the approval of the Second Amended DS and confirmation of the Second Amended Plan in accordance with the Court's request made on the record on December 2, 2020 that all objecting parties provide an update to the Court on whether they continue to object to the Second Amended DS and Second Amended Plan on or before December 21, 2020.

2. In support of the Banks' supplemental objection to the approval of the Second Amended DS and confirmation of the Second Amended Plan, the Banks' continue to rely on and respectfully direct the Court to the Banks' initial objection to approval of the Second Amended DS and confirmation of the Second Amended Plan filed on November 20, 2020 (the "**Initial Opposition**"). *See* CM/ECF Doc. No. 234.

3. The Second Amended DS and Second Amended Plan remain deficient and unconfirmable because they do not explain in detail how they intend to treat SB One's claim under the Second Amended Plan.

4. Further, to the extent the Debtor and Trustee have worked out a resolution that would allow the Trustee to move forward with a proposal to sell certain real property located at 41A Inlet Drive, Point Pleasant Beach, New Jersey (the "**41A Property**") that is secured by SB One's Mortgage, SB One's objection remains as the Second Amended DS and Second

---

[1] Effective July 31, 2020 Provident has acquired SB One.

Amended Plan do not identify how much SB One will be paid so SB One can determine if it is an amount sufficient to satisfy the amount of SB One's allowed secured claim[2].

5. The Second Amended Plan also continues to violate the Absolute Priority Rule set forth under section 1129 of the Bankruptcy Code, which requires that unsecured creditors be paid in full before any value can be provided to equity interest holders. 11 U.S.C. § 1129(b)(2)(B).

6. The failure to provide for payment to unsecured creditors in full while proposing that Dr. Focazio's equity interests in William J. Focazio MD PA and Endo Surgical Center of North Jersey, P.C means that the Second Amended Plan violates the Absolute Priority Rule under Section 1129(b)(2)(B).

7. In addition to the foregoing, the multitude of issues raised by the Chapter 11 Trustee, Edward A. Philips, in his November 20, 2020 Certification (the "**Trustee Certification**") (filed after the Initial Opposition), serves as an additional reason why the Second Amended DS and Second Amended Plan cannot be approved. *See* CM/ECF Doc. No. 236.

8. Indeed, based on the Trustee's representations of non-cooperation and non-disclosure, the Banks do not believe that the Debtor can satisfy section 1125 of the Bankruptcy Code which requires the Second Amended DS to provide creditors with "adequate information" defined as:

---

[2] Based on a recent appraisal received by SB One, there may be a contested valuation on the 41A Property.

3

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . .

[11 U.S.C. § 1125(a)(1)].

9. There is now a separate impediment to confirmation as well – whether the Second Amended Plan is proposed in good faith as required pursuant to section 1129(a)(3) of the Bankruptcy Code.

10. In *In re American Capital Equipment, LLC*, the Third Circuit Court of Appeals explained the objectives and purposes that the good faith requirement of section 1129(a)(3) is intended to protect:

> Specifically, under Chapter 11, the two "recognized" policies, or objectives, are "preserving going concerns and maximizing property available to satisfy creditors[.]" *Bank of Am. Nat.'l Trust and Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999) (*citing Toibb v. Radloff*, 501 U.S. 157, 163, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991)). More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh start in life," *Walters v. U.S. National Bank of Johnstown*, 879 F.2d 95, 98 (3d Cir.1989), "discourag[ing] debtor misconduct," *id.*, "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," *Integrated Solutions, Inc. v. Service Support Specialties*, 124 F.3d 487, 489 (3d Cir.1997), and achieving fundamental fairness and justice. In re Kaiser Aluminum Corp., 456 F.3d 328, 339–43 (3d Cir.2006).

[*In re American Capital Equipment, LLC*, 688 F.3d 145, 157 (3d Cir.2012) (parallel citations omitted)].

11. Although Debtor has filed a December 13, 2020 Certification in response to the

4

Trustee Certification (the "**Debtor Responding Certification**"), the Debtor Responding Certification only creates more questions and leaves many of the allegations of Debtor misconduct unresolved. *See* CM/ECF Doc. No. 246. These numerous questions of fact that go to the heart of the Debtor's adequate disclosure and good faith requirements under the Bankruptcy Code should be more fully addressed prior to any confirmation.

12. By way of example, Debtor admits at paragraph sixteen (16) that he transferred his 100% interest in a limited liability company that owned certain real property located at 975 Clifton Avenue, Clifton, NJ to his daughter in December of 2015 in exchange for $10.00 but claims that he was "solvent" and this transfer was at the request of First Commerce Bank. However, this transfer was just shortly after Provident had filed its November 16, 2015 Complaint against Debtor in an action entitled *Provident Bank v. East Brunswick Imaging Associates, LLC and William Focazio*, Docket Number MID-L-6829-15. While we do not know for sure whether Debtor was "solvent" at the time the property was transferred, the transfer of property right after the filing of Provident's collection Complaint, should be something the Trustee should look further into to determine if the transfer was a fraudulent transfer and whether the Trustee can recover some or all the proceeds from the March 6, 2019

5

sale.[3]

13. Similarly, Debtor claims at paragraph forty-one (41) that he transferred a 2009 Aston Martin V8 Vantage Convertible to his wife in 2016, claiming, again, that he was "solvent and never contemplated filing bankruptcy." *See* Debtor Responding Certification at CM/ECF Doc. No. 246.

14. Again, while we do not know the exact date of the transfer or whether Debtor was technically "solvent", Provident had obtained an Order for Default Judgment against Debtor on March 18, 2016 which was recorded as a Judgment Lien on March 31, 2016. *See* Provident Proof of Claim, Claim No.: 12-2, Exhibit E – Order for Judgment. This transfer, in the face of an impending Judgment, was in all likelihood fraudulent and designed to avoid Provident's judgment lien.

15. In addition, Debtor includes a hearsay statement at paragraph thirty-seven (37), stating that his accountant, Paul Gagliano, is "unaware of any documents still outstanding per the subpoena served on him". Debtor Responding Certification at CM/ECF Doc. No. 246

16. However, this statement directly contradicts the Trustee's Certification that Mr. Gagliano has failed to respond to the Trustee's Subpoena, even after this Court entered an order

---

[3] The Trustee Certification states that the property in question was sold to the Manzo Medical Organization of Clifton, LLC for $1,525,000 by deed dated March 6, 2019. Nevertheless, it is unclear how much Debtor's daughter (through a limited liability company, The Medical Building, LLC) realized from the sale as a *lis pendens* recorded by First Commerce Bank referenced a mortgage of $1,000,000. *See* CM/ECF Doc. No. 236, Trustee Certification at ¶ 28. Notably, even assuming *arguendo*, Dr. Focazio's daughter "only" received ~$500,000 from the sale (the amount above the recorded Mortgage amount), this is still a significant sum that could be recovered back into the Estate.

compelling him to comply in February of 2020. *See* Trustee's Certification at CM/ECF Doc. No. 236, ¶¶ 67-66.

17. Another significant issue, largely unaddressed in the Debtor Responding Certification, is what happened to Debtor's ownership interests and salary/distributions from Crosstown Medical, P.C. ("**Crosstown**").

18. As further set forth in the Trustee Certification, prior to the Trustee's appointment, Debtor was receiving distributions from Crosstown of between $16,000 and $40,500 per month. *See* Trustee's Certification at CM/ECF Doc. No. 236, ¶ 107.

19. Yet, suspiciously, shortly after the Trustee was appointed, the lucrative distributions in Crosstown (which Debtor's schedules reflect he is the 100% owner of) mysteriously dried up. *See* Trustee's Certification at CM/ECF Doc. No. 236, ¶ 79.

20. Moreover, to date, Debtor has not complied with the Subpoenas served by the Trustee and directed to Crosstown and another entity, Triboro Medical Services PC, which the Debtor formed one week after the Court Order appointed the Trustee but failed to inform the Trustee of. *See* Trustee's Certification at CM/ECF Doc. No. 236, ¶¶ 72, 82.

21. Although Debtor now clarifies that he is indeed the 100% owner of Crosstown[4], Debtor's response to the allegations related to Crosstown is that it shut down due to "financing issues" and he routed certain funds through the Crosstown account to pay his retainer to SM

---

[4] During the December 2, 2020 hearing Debtor's Counsel likely mistakenly represented that Debtor does not own Crosstown.

7

Law, "for ease of access." Debtor Responding Certification at CM/ECF Doc. No. 246, ¶¶ 17 and 36. The coincidence that Crosstown shut down and lucrative distributions ceased just after the appointment of the Trustee should not be overlooked by this Court.

22. Debtor's claim that any "omission or formal notification of Triboro was accidental", is suspicious as well. *See* Debtor Responding Certification at CM/ECF Doc. No. 246, ¶ 39.

23. Many other statements by the Debtor in the Debtor Responding Certification necessitate further inquiry as well as many of them either just simply dispute the contentions of the Trustee in a conclusory fashion or rely on generalizations. *See e.g.*, Debtor Responding Certification at CM/ECF Doc. No. 246, ¶ 15 (explaining in a conclusory fashion that many of the limited liability companies listed on Debtor's schedules do not have any value); ¶¶ 70-73 (claiming generally that Debtor relies on family and friends to pay significant personal expenses); ¶ 46 (claiming paragraph number 81 to the Trustee Certification is untrue and stating that Debtor is prepared and willing and able to provide any information requested by the Trustee); ¶ 24 (claiming that paragraph number 46 to the Trustee Certification "is unequivocally not true").

24. For all of those reasons, and the reasons set forth in the Banks' Initial Opposition, the Court should enter an Order denying approval of the Second Amended DS and confirmation of the Second Amended Plan.

8

## **RESERVATION OF RIGHTS**

25. The Banks hereby reserve the to object to confirmation of the Second Amended Plan on the basis of any objection asserted herein or otherwise, and to assert additional objections to the adequacy of the Second Amended DS and Second Amended Plan. Additionally, the Banks reserve their rights to comment upon and object to the form of any order presented to the Court in connection with the Second Amended DS and Second Amended Plan.

## **CONCLUSION**

**WHEREFORE**, for the reasons set forth herein, the Banks respectfully request that the Court deny the approval of the Second Amended DS and confirmation of the Second Amended Plan as currently presented.

        **MEYNER AND LANDIS LLP**
        *Attorneys for Provident Bank and SB One Bank*

        By:   */s/ Matthew P. Dolan*
                Matthew P. Dolan

DATED: December 21, 2020